**167 So. 438**

**Succession of EDGAR.**

**No. 33511.**

March 30, 1936.

Loys Charbonnet, William J. Guste, and M. M. Schaumburger, all of New Orleans, for appellants.

Fred G. Veith, of New Orleans, for appellee.

ROGERS, Justice.

Cora Haynes, a negro woman, residing in New Orleans, executed a nuncupative will by public act before Anna Naumann, notary public, on November 29, 1933. On January 16, 1934, she was knocked down and injured by the revolving door of the Whitney National Bank, where she had gone unattended to transact certain business. On February 9, 1934, she died as a result of her injuries, and her will was admitted to probate.

The testatrix had no forced heirs. With the exception of two $1,000 industrial bonds bequeathed to Alphonse Magi Guma and $500 left to the American Bank & Trust Company, of New Orleans, conditioned that the interest thereon should be used for the perpetual care of her tomb, the testatrix bequeathed her entire estate to certain charitable institutions of the city of New Orleans. Mathilde V. Perkins and Cora V. Perkins, cousins, and Verrina E. Perkins, adopted child of Ellis Edgar, predeceased brother of the testatrix, alleging their heirship, sued to annul the will, on

the ground that it had not been executed according to the formalities prescribed by law and on the further ground that the testatrix at the time the will was made did not have testamentary capacity.

The trial judge assigned the following written reasons for his judgment, viz.: "The Court, after hearing the testimony of both the opponents and the proponents, is thoroughly satisfied that the will executed by the decedent before Anna Naumann, Notary Public, on the 29th. of November, 1933, was made while decedent was in her sound mind and that it complied with all the formalities as required by the Civil Code of this State." A close study of the record convinced us that the reasons of the trial judge are sound and that his judgment maintaining the will is correct.

In support of their contention that the will was not executed with the formalities prescribed by law, plaintiffs called as witnesses the three persons who had witnessed the will and the notary before whom it was executed. One of the witnesses is a well-known attorney of the local bar, another is an assistant state examiner for the Home Owners' Loan Corporation, and the third witness is a sister of the notary. All of them testified that the testatrix was in the office of the notary; that nobody was present except the testatrix, the notary, and the three witnesses, and their testimony shows conclusively that the will was dictated, written, read, signed, and executed entirely in accord with the codal provisions. Plaintiffs virtually concede this to be true, and before this court they have

addressed their argument to the main issue involved in the case, whether Cora Haynes possessed testamentary capacity at the time she made the will.

■ Testamentary capacity is the ability of the testator to comprehend the condition of his property and his relation to those who might naturally expect to become objects of his bounty. Testamentary capacity is presumed, and the person attacking the will has the burden of showing lack of such capacity when the will was executed. Rostrup v. Succession of Spicer, 183 La. 969, 165 So. 307.

■ The testatrix was about 78 years of age at her death, which occurred 2 months and 11 days after she had made her will. Plaintiffs' witnesses testified as to the ill health of the decedent, her peculiarities, her spells of ill temper, and her personal untidiness. Plaintiffs also offered some evidence as to the physical and mental condition of the mother and brother of the testatrix for the purpose of showing the existence of insanity in the family. One of plaintiffs' witnesses, Dr. George F. Roeling, an expert on mental diseases, was called solely for the purpose of answering a hypothetical question. This question, which occupies several pages of the transcript, assumed a state of facts not wholly borne out by the record. Answering the question, plaintiffs' expert expressed the opinion that the person described was suffering from senile or organic dementia and was incapable of making a will. However, in answer to a hypothetical question propounded by defendant's counsel, in which the counsel set forth the facts as he ap-

preciated them, the witness stated that the person described in the question did not exhibit any dementia and was capable of attending to the necessities of her business.

Plaintiffs utterly failed in their attempt to show the existence of insanity in the family of the testatrix. The mother of the testatrix died of senile debility, which, according to the medical testimony in the record, is a wholly different physical and mental condition from senile dementia and excludes the idea of insanity. Senile debility merely indicates age in a human being without loss of the mental faculties. The brother of the testatrix was 76 years old at the time of his death, which occurred in the East Louisiana State Hospital for the Insane. He was sent to the hospital because of his impaired mental condition brought on by acquired, not inherited, syphilis. The cause of his death was given as general arteriosclerosis.

The peculiarities and irritableness of the decedent referred to by plaintiffs' witnesses were clearly nothing more than the characteristics frequently exhibited by old persons. They did not establish insanity or dementia. The testimony of the witnesses as to the personal untidiness of the decedent was flatly contradicted by the testimony of a number of the witnesses produced by the defendant.

Defendant recalled as witnesses the three witnesses to the will. Defendant also placed on the stand a former custodian of the safety vault of the Canal Bank and its successor, the National Bank of Commerce, two employees of the Whitney National Bank, the pastor of decedent's church, the physician who received and treated her at the Charity Hospital, the secretary of the hospital, the superintendent of the Thomy Lafon Home, a negro businessman who was well acquainted with the decedent, and Dr. Joseph A. O'Hara, who is well and favorably known to the courts of this state as a conscientious and able psychiatrist.

The notary and the three witnesses to the will testified the testatrix was neat and clean; that she appeared to be perfectly normal and seemed to understand what she was doing and the dispositions she was making of her property. With the exception of the Eye, Ear, Nose, and Throat Hospital, all the institutions mentioned in the will are institutions conducted in the interest of, and for the benefit of, members of the negro race. The Eye, Ear, Nose, and Throat Hospital, however, operates a free clinic for the treatment of indigent negroes. The Flint-Goodridge Hospital of Dillard University, one of the legatees, had received a manual gift of $300 from the testatrix a few years before she made her will. The two employees of the Whitney National Bank who ministered to the testatrix at the time she was injured testified that she appeared to be normal and that there was nothing in her words or actions that indicated otherwise. On the day she was injured the testatrix called at the bank unattended and indorsed and cashed a dividend check issued by one of the local building and loan associations. The custodian of the vault where the testatrix kept her bank box testified that the testatrix would visit the bank alone, get

her box, and go into the booth, where she would cut the coupons attached to her bonds, place them in the envelopes provided for the purpose, and deposit them to her account; that testatrix consulted her when certain Liberty bonds were called for for redemption. The testatrix told her at that time she had made a will; that her family had not paid much attention to her; that she was friendly with them, but they had not been very nice to her. The pastor of her church visited testatrix at her home and also at the hospital. The superintendent of the Lafon Home for old people (a negro institution) also saw the testatrix at her home and at the hospital. A negro businessman who knew the testatrix for about 30 years called on her at the hospital. All these witnesses testified that the testatrix appeared to be perfectly normal. The physician who received the testatrix at the hospital identified the record which he made at the time. He stated that all the information contained in the record was obtained from the patient herself. His testimony clearly shows that the testatrix was a normal person for one of her age. Finally, Dr. O'Hara, who had been in the courtroom during the trial of the case and had heard the testimony of all the witnesses except one, testifying as an expert, emphatically declared that, after listening to the testimony and considering the records of the hospital and the insane asylum,

he was of the opinion that the testatrix was sane at the time she made her will.

In Succession of Mithoff, 168 La. 624, 122 So. 886, it was held that, if a testatrix possessed sufficient disposing capacity at the time the will was executed, it is valid, "even though it be shown that she suffered complete dementia before and after the making of the two donations."

In Rostrup v. Succession of Spicer, 183 La. 969, 165 So. 307, this court recently held that, although the mental faculties of an 86 year old testatrix were considerably weakened by age, yet as she knew what property she had and what disposition thereof she desired to make when executing a nuncupative will by public act she possessed testamentary capacity and her will was valid.

This is a much stronger case for maintaining the validity of the will than were the cases of Succession of Mithoff and Rostrup v. Succession of Spicer. We have no doubt that, due to her age, the testatrix had suffered some impairment of her mental powers; nevertheless we are satisfied that she possessed sufficient mentality to enable her to make a valid will.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., absent.