MOISE, Justice.
 

 Plaintiffs take this appeal from a judgment dismissing proceedings instituted by them to have annulled and set aside a nuncupative will by public act executed by Mrs. Louise Cook Hardwick on November 26, 1946, and all proceedings taken in her succession, on the ground that “At the time of the execution of the will * * * Louise Cook Hardwick was not of sound mind and mentally incapable of executing a will.” (Art. 3, plaintiffs’ petition.) They pray that an olographic will made by the testatrix on July 18, 1946, in which they were the named legatees, be declared the last will and testament of the testatrix.
 

 
 *451
 
 Defendants filed an answer denying plaintiffs’ allegations. They contend that the testatrix was fully capable of comprehending the condition and extent of her property, and that she was fully aware of the meaning of her testamentary acts; and was conscious of the effects thereof at the time said will was executed.
 

 The case went to trial on the merits and the district court rejected the plaintiffs’ demands and dismissed their suit. They have appealed.
 

 The sole question presented for our determination is one of fact — whether or not the testatrix was sane at the time the will of November 26, 1946 was executed.
 

 It is our settled jurisprudence that “Testamentary capacity is presumed, and the person attacking the will has the burden of alleging and proving lack of such capacity when the will was executed.” Succession of Stafford, 191 La. 855, at page 861, 186 So. 360, 361; Landry v. Landry, 196 La. 490, 199 So. 401; Succession of Lambert, 185 La. 416, 169 So. 453; Succession of Edgar, 184 La. 775, 167 So. 438.
 

 In our study of this case, the following factual recital is helpful :
 

 Mrs. Hardwick died on March 3, 1947. She had no children nor descendants or ascendants whatsoever, her only relatives being distant collaterals and a husband, against whom a suit for separation from bed and board was pending at the time of her death. Her succession was opened and her last will of November 26, 1946 was filed and ordered executed. Louisa Gregory, one of the defendants herein and a principal legatee, was named and duly qualified as executrix. Some two months later, this suit was filed by two of the legatees named in a prior will of July 18, ■ 1946, one of whom is also named as a legatee in the will of November 26, 1946, which plaintiffs seek to have declared null. The will of November 26, 1946, was executed before a Notary Public for the Parish of Orleans on the eve of a major operation for a suspected brain tumor. The operation was not successful. The testatrix did not die immediately but she never recovered from its effects.
 

 Mrs. Hardwick, the testatrix, and her husband had had a turbulent married life. They had separated
 
 on
 
 several occasions and on March 8, 1943, she obtained a judgment of separation of bed and board from him. A reconciliation in the Fall of 1943 was followed by a new separation suit in 1946. This suit was pending at the time of her death, in fact, a summons had been issued to Mrs. Hardwick while at the Touro — the case having been set for trial on November 26, the day the will was written and the day before the operation. Mr. Hardwick was insisting on the trial of the case, in spite of Mrs. Hardwick’s predicament. Although this case had not been tried on the merits, certain phases dealing with property rights had been hotly contested. Testatrix’s husband had tried to
 
 *453
 
 force the sale of the home and she was able to remain there only by order of court. She obtained alimony by rule. While being deeply concerned and worried over her physical condition, this constant litigation with her husband and his opposition at her every turn caused Mrs. Hardwick great mental anguish and had no good effect on her state of mind. Over a period of about three years, she had written four known wills. The final will executed on November 26, 1946, revoked all previous testaments. This is the will plaintiffs seek to have annulled. By this testament, the testatrix bequeathed all of her property equally to four legatees by universal title, namely, Louise McCarty and Louisa Gregory, named in the three wills previously written, Mrs. Katie Lee Bettis, named in the previous will of July 18, 1946, and in the last will, and Mrs. Byrd Morris Lantz, who cared for testatrix almost constantly during her illness and had accompanied her to New Orleans, and was with her when she underwent surgery on November 27, 1946. The Oklahoma attorney of testatrix and her Shreveport attorney, and Louisa Gregory were named as executors.
 

 Testatrix was admitted to the Schumpert Sanitarium in Shreveport on September 17, 1946, at which time she had paresis of the right arm and right leg, which subsequently was shown to have been caused by a brain tumor. She was taken to New Orleans on November 14, 1946, and was first seen by Dr. Dean Echols of the Oehsner Clinic, who was head of the Department of Neuro Surgery, who diagnosed her condition as being caused by a tumor on the brain. On November 25, she was removed to the Touro Infirmary for surgery. On the night of the 26th, Mr. Rosen, of the firm of Rosen, Kammer, Wolff, Hopkins & Burke, attorneys, and who is a member of the Board of Trustees of the Touro Infirmary, was called for Mrs. Hardwick with a view of drawing her last will. Mr. Rosen saw Mrs. Hardwick and talked with her, and then called Mr. Felix H. Lapeyre, an attorney and notary with his firm, and had him call at the Touro and take Mrs. Hard-wick’s will, explaining to him that she was to go through brain surgery the following day. Mr. Lapeyre called at the hospital and there the will of Mrs. Hardwick was executed in nuncupative form.
 

 The plaintiffs contend that Mrs. Hard-wick was habitually insane from October 27, 1946, and that this condition became progressively worse until her death and, therefore, she was of unsound mind at the time the wi.ll was executed.
 

 The evidence shows that testatrix was a vivacious and impulsive person; that she was talented and dramatic. She had taught school, lectured, written, played dramatic parts and written radio skits — and that just before her illness she had made plans to support herself by doing radio work, writ
 
 *455
 
 ing and lecturing. She had traveled extensively and had given travel lectures.
 

 At the trial of this case on the merits, a number of witnesses, both medical experts and lay witnesses, gave testimony regarding the mental condition of the testatrix prior to and at the time of the execution of the will of November 26, 1946. None of the doctors who testified were present at the time of the taking of the will, and, as is usual in such cases as this, their testimony is conflicting. The witnesses for the plaintiffs, with the exception of Dr. Echols (whose testimony is most impressive) testified that, in their opinion, Mrs. Hardwick did not have the mental faculties to execute a valid will. The expert witnesses for the defendants, gave every indication that Mrs. Hardwick was in full possession of her mental faculties and capable of making a will. Dr. Echols, an outstanding Neuro Surgeon, widely known in his field, testified that in his opinion the testatrix was capable of understanding the extent of her property and her relations with those persons who might normally expect to benefit from her beneficence. He saw testatrix many times, before and after her operation, and was present during the operation. Dr. Willis P. Butler, who has had extensive experience in the general field of medicine and has been Coroner of Caddo Parish, La. for approximately thirty years, and has had opportunity to observe cases similar to Mrs. Hardwick’s, made a thorough study of the very well have full possession of her mental faculties and is capable of understanding what she is doing and what is going on about her. The lay witnesses who saw Mrs. Hardwick at or near the time of the execution of the will were all of the opinion that she fully understood what she was doing.
 

 Further, in his well-written reasons for judgment, the district judge made these important observations:
 

 “When we study the provisions of the will executed by Mrs. Hardwick and compare them with previous wills, we are certainly unable to say that the' provisions of the will indicate that she did not understand her relations with the persons to whom she desired to make bequest. Three of the legatees have been named in previous wills, and the fourth, Mrs. Byrd Morris Lantz, had been in constant attendance upon her and had befriended her in the darkest hours of need. The fact that she didn’t make the extent of her property entirely clear to Mr. Rosen, is not sufficient to convince us that she did not know the extent of her property. She insisted to Mr. Lapeyre that he use the phrase ‘of right, title and interest in and to my property,’ or words to that effect. Having gone through the legal skirmishes with regard to property rights that Mrs. Hardwick had been Through, indicates to us that she had a full appreciation of the fact that some of
 
 *457
 
 her property might have been held by precarious title, and that she was disposing of case history of testatrix. He testified that in his opinion, a person afflicted as was Mrs. Hardwick, with a brain tumor, may only such rights as she had in and to her property.
 

 “The testimony of the lay witnesses in the case show, at most, that Mrs. Hardwick had some eccentricities and did a lot of playing, acting, and, in many cases, dramatized occurrences beyond their true' value. We must bear in mind that Mrs. Hardwick was, in fact, a sick woman and a dying person. We cannot, therefore, expect her actions to be entirely what we would expect of a person completely sound of mind and body. However, Mrs. Hardwick, in our opinion, had a fuller realization and better appreciation of the predicament that she was in than we could normally expect of a person so situated. * * * To her friends who saw her just prior to the time of the execution of the will, and to the people who saw her execute the will, she gave no appearance of lacking the capacity to understand the consequences of her acts. Had she shown signs of being mentally incapable of executing the will, we do not believe that Mr. Rosen would have summoned Mr. Lapeyre to take the will, nor would Mr. Lapeyre have taken the will had she exhibited any signs of being abnormal. * *
 

 After analyzing all of the evidence, we believe, as did the learned district judge, that plaintiffs have failed to establish by a preponderance thereof, that testatrix was mentally incapable at the time of the execution of the will of November 26, 1946, and it is our opinion that she realized what she was doing, just what she had and what she wanted to do with it.
 

 Linder the law, in the absence of forced heirs, a testator may dispose of his .property as he pleases. “ * * * The fact that a man is subject to disease of the brain is, per se, no better reason for depriving him of testamentary power than would be his having a disease of the liver.” Kingsbury v. Whitaker, 32 La.Ann. 1055, 36 Am.Rep. 278; Wood v. Salter, 118 La. 695, 43 So. 281; Succession of Heinemann, 172 La. 1057, 136 So. 51; Rostrup v. Succession of Spicer, 183 La. 1087, 165 So. 307. And, in the Kingsbury v. Whitaker case, supra, our Court had this to say: “To wrest a man’s property from the person to whom he has given it, and divert it to others from whom he has desired to withhold it, is a most violent injustice, amounting to nothing less than post-mortem robbery, which no court should sanction unless thoroughly satisfied that the testator was legally incapable of making a will.” Godden v. Burke, 35 La.Ann. 160; Ducasse’s Heirs v. Ducasse, 120 La. 731, 45 So. 565.
 

 Multiple cases have reached this Court involving the question of testamentar
 
 *459
 
 ry capacity and it has been in rare instances only — where the evidence of insanity was positive and overwhelming — that the wills were annulled and voided. Our court has consistently held that medical testimony unsupported by concrete factual evidence of insanity actually affecting the execution of a will is insufficient. This is particularly true where the medical evidence is conflicting. Interdiction of Escat, 206 La. 207, 19 So.2d 96; Chandler v. Barrett, 21 La. Ann. 58, 99 Am.Dec. 701; Kingsbury v. Whitaker, 32 La.Ann. 1055, 36 Am.Rep. 278; Godden v. Burke, supra; Succession of Bey, 46 La.Ann. 773, 15 So. 297, 24 L.R. A. 577; Succession of Jacobs, 109 La. 1012, 34 So. 59.
 

 In the instant case, we have observed that there is no evidence that this testatrix was ever insane or incompetent or that interdiction proceedings were ever applied for; and the true test in all such cases as this is whether, at the time of the making of the will, the testatrix was of sufficient mind to understand the nature of the testamentary acts and appreciate their effect. The evidence shows that Mrs. Hardwick was; and the trial judge who saw and heard the witnesses reached this same conclusion, and we find nothing in the record to convince us that he was manifestly erroneous. Therefore, his judgment will not be disturbed.
 

 For these reasons, the judgment appealed from is affirmed at plaintiffs’ costs.