**84 So.2d 442**

*Succession of Mrs. Olympe LAFFERAN-DERIE, Widow of Armand Desmare.*

No. 42061.

Dec. 12, 1955.

Richard J. Meunier, Thomas J. Meunier, New Orleans, for defendant-appellant.

Herbert S. Weil, Philip R. Livaudais, New Orleans, Walter F. Marcus, Jr., New Orleans, of counsel, for plaintiff-appellee.

PONDER, Justice.

This is an appeal from a judgment of the Civil District Court decreeing a nuncupative will by public act invalid and void on the ground that the testatrix lacked testamentary capacity to make the will, and recognizing a prior nuncupative will executed by the decedent.

Mrs. Lillian White, universal legatee and testamentary executrix, brought proceedings for the probation of a nuncupative will by public act, executed on March 10, 1954. She qualified as testamentary executrix and thereafter Dr. George B. Crozat, named legatee and executor in a prior will dated July 29, 1948, brought suit seeking to have the will dated March 10, 1954, declared null and void on the grounds that it was not executed in compliance with law and that the testatrix lacked testamentary capacity to make the will due to her senile dementia. He asked that the will dated July 29, 1948, in which he was named executor, be recognized as the last will and testament of the decedent. Mrs. White, in answer to the suit, denied the lack of testamentary capacity on the part of the testatrix. The lower court, upon trial of the case, gave judgment decreeing the will, dated March 10, 1954, void on the ground that the testatrix lacked mental capacity to make a will at the time it was executed and ordered the will dated July 29, 1948, to be probated. Mrs. White has appealed.

The appellant contends that the appellee failed to prove that the testatrix lacked

testamentary capacity at the time the will was made. She takes the position that the presumption of sanity at the time of making the will has not been successfully rebutted.

There is no dispute as to the law governing this case. The litigants concede that there is a legal presumption of sanity at the time of the will's confection and that the person attacking the will has the burden of showing lack of testamentary capacity when the will was executed. It is also conceded that it is only necessary to prove that the testatrix possessed testamentary capacity at the moment the will was made even though the testatrix may have been irrational at times. It is further conceded that the test of testamentary capacity is the ability of the testatrix to comprehend the condition of her property and her relation to those who may naturally expect to become the object of her bounty. Therefore, the dispute arising in this case is one of fact.

In determining the mental capacity of a person suffering from senile dementia or senility, great weight must be given to the testimony of attending physicians, nurses, and persons who have been in close contact with the testatrix at the time of the making of the will. Succession of Pizzati, 218 La. 549, 50 So.2d 189, and the numerous authorities cited therein.

The decedent, Mrs. Desmare, at the time of her death on March 19, 1954, was 86

years of age. On March 8, 1954, eleven days prior to her death, she was admitted to Sara Mayo Hospital because it was believed that she had received a fracture of the hip resulting from a fall. After tests and X-rays were made, it was ascertained that her hip was not fractured but that she was suffering from diabetes, for which she had been treated for a number of years. She died from chronic nephritis, diabetes mellitus and uremia. It appears from the evidence that she was in a coma for four days prior to her death.

The will in contest in this case was executed on March 10, 1954, nine days prior to Mrs. Desmare's death which occurred on March 19, 1954. It was executed in nuncupative form before a notary public and four witnesses. It appears the notary was not acquainted with the decedent prior to the time of the making of the will and that one of the witnesses, Mrs. Favre, was a tenant and close friend of Mrs. White, sole and universal legatee, and two of the other witnesses were relatives of Mrs. Favre. The remaining witness was engaged to be married to the brother of Mrs. Favre.

Dr. Eugene H. Claverie, the physician who attended decedent from 1942 until the time of her death, testified that the testatrix began to fail mentally in the year 1949 and that since May of 1951, upon his instructions, a niece, Dr. Anita Crozat Kornsdorf, had taken over the management of Mrs. Desmare's affairs due to the fact

that the testatrix was incapable of administering them. He testified that from the date of her admission to the hospital until the date of her death she was irrational, did not know where she was, did not recognize him or those related to her and was completely disoriented. He further testified that in the afternoon of the day that the will was made, the nurse attending the testatrix telephoned him that the testatrix was in such bad condition that it was impossible to manage her. Upon receiving this call, Dr. Claverie called relatives of the testatrix and informed them that he would not be responsible for her (testatrix) unless one of the relatives would be in attendance at all times. He stated that he went to see the testatrix on the afternoon of the date the will was made and she told him that he had made her sign a paper giving all of her property to him, Dr. Claverie. Upon interrogation of a patient in the ward he learned that a will had been executed that day. He stated that at that time the testatrix was so irrational that she did not comprehend anything. He immediately notified some of her relatives and thereafter called in two psychiatrists, Dr. Charles S. Holbrook and Dr. Fred S. Brewer, to examine the testatrix.

Dr. Holbrook examined the testatrix on March 12th and on two subsequent occasions. He testified that the testatrix was suffering from chronic brain syndrome with senile mental deterioration or, in common parlance, softening of the brain or

advanced senility, and that it was impossible for her to be competent and have her faculties at the time of the making of the will. Dr. Brewer examined the testatrix and his testimony is to the same effect.

Dr. W. Hammond Newman, an orthopedist who attended the testatrix when she was admitted to the hospital, testified that the testatrix was suffering from senile dementia; that she was not in touch with reality; and was not oriented in any sphere; that she did not know where she was and that this condition undoubtedly existed for some time prior to her admission to the hospital. Dr. Newman also testified that on March 8th, the date of her admittance to the hospital, the testatrix denied having incurred a fall and that she was in such poor mental condition that it was impossible for him to secure a case history from her. His testimony is supported by the notation made by him on March 8th on the medical chart introduced in evidence.

The only expert witness produced by the appellant was Dr. Henry Tharp Posey, a psychiatrist, who had not examined or ever seen the testatrix, but testified that in his opinion from his examination of the hospital chart, that the testatrix' irrationality was due to the drugs that had been administered to her rather than to senile dementia. He was of the opinion that the testatrix could have had a lucid interval and that the irrationality could have resulted from uremic poisoning.

Miss Vivian Swanson, one of the nurses who attended Mrs. Desmare while she was in the hospital, testified that the testatrix was senile and did not know what was going on at the time that she was attending her. Mrs. Margaret Plaisance, a patient in the same ward, testified to the same effect. Ten other witnesses, consisting of relatives, neighbors, and friends, testified in effect that the testatrix was unable to comprehend and that she had been senile for some years prior to her death.

The notary and the four witnesses to the will testified that the testatrix was rational at the time the will was made. It was admitted by the witnesses to the will that the testatrix was unable to remember the words of the will she was dictating and on two occasions had to be prompted by Mrs. Favre, who was standing on the side of the bed of the testatrix. They testified that the testatrix did not have her glasses and that Mrs. Favre said the words and the testatrix repeated after her. The notary stated in his testimony that the testatrix requested him on two occasions to place her hand on the line when she signed her name. The appellant produced other witnesses who were neighbors, relatives and friends, who had not seen Mrs. Desmare recently, and their testimony is to the effect that the testatrix was in possession of her faculties when they saw her. But an examination of their testimony shows that they did not interrogate or discuss with the decedent her business affairs but

the conversations were principally about weather conditions and her health.

■ The appellant and the appellee are niece and nephew of the testatrix. In disputes arising between relatives of a deceased person it is well to ascertain which of these relatives' testimony is corroborated by impartial and competent evidence. In this case the preponderance of the medical evidence clearly shows that the testatrix was incapable of making a valid will. The nurse and the patient in the ward, both disinterested witnesses who had every opportunity to observe the decedent, testified in effect that she was incapable of making a will.

It appears from the testimony that the manner in which the will was made, viz.: that the words had to be placed in the mouth of testatrix by Mrs. Favre and that she did not voluntarily dictate her will, corroborates the medical testimony to the effect that decedent was incapable of making the will.

Ordinarily great weight is given to the testimony of the notary and the witnesses to the will but, where a notary has never before seen the testatrix, his opinion as to the mental capacity of the testatrix cannot prevail in the face of strong testimony to the contrary. As to the four witnesses to the will, it appears that Mrs. Favre took a very active interest in the confection of the will and the relationship of the other witnesses to her must be considered in arriving at a conclusion in this case.

After considering all of the testimony in this case, the conclusion is inescapable that the testatrix was incapable of making the will at the time the will was confected. The trial judge arrived at this conclusion and he had ample opportunity to observe the demeanor of the witnesses and manner in which they gave their testimony. We find no error in his conclusion that the will dated March 10, 1954, is invalid.

For the reasons assigned, the judgment is affirmed at appellant's cost.