106 So.2d 697

Succession of Laurence J. HOLLAND.

No. 44069.

Nov. 10, 1958.

Rehearing Denied Dec. 15, 1958.

Jesse S. Guillot, Melvin J. Duran, New Orleans, for opponents-appellants.

James T. Flanagan, New Orleans, for executor-appellee.

SIMON, Justice.

This is an appeal from a judgment decreeing valid the last will and testament of Laurence J. Holland, dated July 16, 1957, which was executed during decedent's last illness while a patient in St. Joseph's Hospital in Joliet, Illinois.

In the district court, Malvern F. Driscoll, as executor named in the will dated July 16, 1957, instituted proceedings to have this will probated. Suit was filed by Melvin J. Duran and Mayer U. Newfield to have the will of July 16, 1957, declared null and void, on the ground of testamentary incapacity of the testator at the time of the execution of the will, and to have probated a prior will, dated August 8, 1956, with a codicil thereto, in which Duran and Newfield were named co-executors. After trial the district court decreed the will of July 16, 1957, to be valid on the ground that the testimony preponderates in favor of testamentary capacity at the time of

the confection of the will. From this judgment opponents, Duran and Newfield, have appealed.

As error, appellants contend that the trial judge did not give sufficient weight to the medical testimony adduced in this case.

The will in question, three typewritten pages in length, was made by decedent during his last illness while a patient in St. Joseph's Hospital in Joliet, Illinois. The will was executed on July 16, 1957, and the testator died as a result of hepatic failure on July 17, 1957. On this appeal there is no question as to the form of the will under the laws of Illinois, the only dispute being as to the testamentary capacity of the testator at the time of the execution of the will. It is admitted by the parties to this suit, executors under the two wills, that the testator, an alcoholic, died at age thirty-five due to hepatic failure.

It is the contention of the appellants that at the time of the execution of the will, July 16, 1957, the testator was in a state of progressive hepatic failure in St. Joseph's Hospital and that as a result of this serious illness, alcoholism, and the administration of hypnotic drugs, he was incapable of executing a valid will and testament. In addition to the medical testimony of two attending physicians, Drs. Theodore Z. Polley and Thomas Morrison, appellants rely upon the testimony of Dr. Joseph E. Schenthal, a specialist in internal medicine, who testified solely from medical charts of St. Joseph's Hospital that were introduced in evidence.

The executor, under the will of July 16, 1957, relies upon the testimony of Judge Stewart Hutchison, who prepared the will and was present at its signing by the decedent, the two witnesses to the will, Mr. Robert Hamlin and Mrs. Mildred Krusemark, and the testimony of the testator's mother, who was present during the night of July 16, 1957.

Hence the question propounded is one of fact, videlicet: whether the testator possessed testamentary capacity at the time of the execution of the will.

According to the record the testator, a resident of Louisiana, went to visit in Joliet, Illinois and while there, on July 7, 1957, took ill with a mouth infection. Dr. Theodore Z. Polley was called to treat testator and after examination on this date, diagnosed testator's condition as trench mouth with a possible upper gastrointestinal hemorrhage and enlargement of the liver, prescribing penicillin for the treatment of the mouth infection. Upon the advice of Dr. Polley, on July 12, 1957, testator was admitted as a patient to St. Joseph's Hospital in Joliet, Illinois, for treatment of a liver ailment. On the day of his admittance, testator telephoned Malvern Driscoll, his attorney in New Orleans, and

informed him that he wished to make a new will. Mr. Driscoll advised testator to contact an attorney in Illinois. Testator requested Mr. Robert Hamlin, a close friend, to secure an attorney for him and on July 15, 1957, Stewart J. Hutchison, Judge of a probate court in Illinois, visited testator in the hospital, with the consent of Dr. Morrison, one of the attending physicians, and received instructions from testator as to the provisions of the will to be made. On July 16, 1957, Judge Hutchison returned to the hospital with the will in question, which was executed on that date in his presence and in the presence of two witnesses, Mr. Hamlin and Mrs. Mildred Krusemark, a nurse in attendance at the hospital.

Before going into a discussion of the testimony presented in the case, we may mention at the outset that both wills made by decedent, one dated August 8, 1956, with a codicil thereto and the other dated July 16, 1957, set up trusts giving monthly payments to testator's aunt and mother and naming a beneficiary for the remainder. In the latter will the testator's mother and aunt are given a slightly larger portion than in the previous will, the name of the beneficiary is changed (both beneficiaries under the respective wills are not relatives of the decedent but merely friends) and the executors named therein are different.

Appellants rely chiefly upon the testimony of Dr. Polley who stated that two days after testator's admittance to the hospital he was incoherent and was having hallucinations. Dr. Polley testified on interrogatories that on July 16, 1957, testator was lethargic, poorly responsive, and in his opinion was in such a condition, mentally and physically, that he could not have understood a three-page typewritten will dealing with trusts and various legacies. His opinion is based on the following facts: testator on July 16th was incontinent of his urine while lying in bed; was running a continued fever of 102.4; was having coffee-ground emesis; was expectorating large amounts of bloody phlegm and was totally incoherent and not responding to stimulae. According to his testimony, Dr. Polley saw the patient during his hospital rounds on the morning of July 16, 1957, between 7:30 and 8:30 A.M. and did not see testator again that day. It appears that the will was executed during the day of July 16, 1957, no exact hour being given but referred to as around the noon hour. Dr. Polley testified that on July 17th the testator was in a critical terminal status, exhibiting gross muscular twitching, was confused and not in contact with his environment.

Dr. Thomas Morrison, who also attended the testator, testified that on July 15, 1957, the testator was mentally clear and alert, and according to the progress notes there is no record of the patient's mental condition to indicate mental confusion on

July 15th. Dr. Morrison did not give an opinion as to the testator's mental capacity on July 16th, not having seen testator on that date. He testified further that he was aware of testator's desire to make a will, having been contacted by Judge Hutchison for permission to see the patient, which consent he did so give.

Dr. Joseph Schenthal, who never saw or examined the testator, testified that the testator was mentally incapable of making a will at any time during his stay in the hospital, his testimony being based exclusively on the medical charts of the hospital introduced in evidence.

Malvern J. Driscoll, attorney and executor named in the will of July 16, 1957, testified that the decedent telephoned him from Illinois on Friday, July 12, 1957, and told him (Driscoll) that he wished to make a new will and eliminate Lee Holland, a beneficiary named in the will of August 8, 1956. Driscoll testified that he advised decedent to contact an attorney in Illinois, which of his knowledge testator did, because Judge Hutchison telephoned Driscoll and discussed the matter with him. Driscoll testified that from the tenor of their conversation there was no indication of any mental incapacity of any kind, the testator's thoughts and desires being clearly and lucidly expressed.

Robert Hamlin, a close friend of testator, testified that several days before July 16th, testator requested him to secure an attorney for the purpose of making a new will. Hamlin testified that he contacted and arranged for Judge Hutchison to visit with the testator on July 15th. Hamlin further testified that he was present as a witness at the execution of the will. The tenor of his testimony is that though the testator evidenced physical weakness as a result of the ailment and his attentiveness and alertness were slightly impaired from the effects of alcoholism extending over a period of several years, nevertheless the testator's mental capacity to appreciate his surroundings and to fully realize the import of his actions was evident.

Stewart Hutchison, an attorney of long standing at the bar and probate Judge of a court in Illinois, testified that upon Hamlin's request he visited with testator on July 15th for about an hour, with the consent of Dr. Morrison. According to his testimony, when asked concerning the condition of decedent from a layman's point of view, he answered:

"He was a patient in bed and undoubtedly ill. When I was first asked to go see him and informed he was a patient, I contacted his attending physician and supervisory nurse of the floor of the hospital. I informed them of my requested presence and the purpose therefor. The Doctor and Nun both informed me that he was physically and mentally able to execute a Will."

On July 15th testator instructed Judge Hutchison as to the provisions he wished contained in the will. On July 16th, Judge Hutchison testified he returned with the will in question which was read to testator and signed by him in the presence of two witnesses, he again remaining with the testator for a period of about one hour. Judge Hutchison testified emphatically that the testator was mentally capable on both of these occasions, was lucid in his expressions, and alert of mind. He testified that the testator was conscious and perfectly aware of the import of the document and its provisions.

A witness to the will, Mrs. Mildred Krusemark, who was a nurse in attendance, testified that she knew decedent from the time of his admittance until his death in the hospital and that decedent told her several times that he wished to make a will. She knew of her own knowledge that decedent requested to see an attorney for the purpose of making a will on about the third day after his admittance. She was asked in interrogatories: "Isn't it true Mr. Holland was attempting and arranging to make this will for several days?" to which she answered: "I'm sure he dwelt on that, in fact seemed quite anxious at times." She testified that she saw the testator sign the will and that he was mentally capable at that time.

The mother of the testator, who resided in New York, testified that testator spoke to her on the telephone at one o'clock in the day on July 16, 1957, and she arrived from New York in Joliet about seven o'clock that night. She testified that she spent most of the night with her son engaging in conversation with him, he being at all times rational and lucid.

According to the medical chart in evidence, the only mention of incoherence on July 16th is an entry at 8:00 P.M. namely: "Patient talking incoherently @ times. Responds to oral stimuli." The testator died on July 17th at 8:40 A.M. and the final diagnosis according to the record is: "Gastro-intestinal hemorrhage, esophageal varices, Cirrhosis, portal." The record does not show that the testator was ever comatose or ever actually lapsed into a coma. The drugs administered on July 16th are as follows: Pancebrin, 1cc. intromuscular; Vitamin C, 500 mgm.; Penicillin, 300,000 units; Dramamine, 50 mgm.; 1000 cc's of 5% Glucose; Vitamin K, Tablets I; Miltown, 400 mgm.; Dilantin, gr. 1½; Ascorbic Acid, 500 mgm.; and Lipoadrenal Cortex. Medical science defines Pancebrin as a vitamin preparation, Dramamine is usually prescribed for nausea, Miltown is a tranquilizer, Dilantin is an anti-convulsant, and Lipoadrenal Cortex is a preparation used for the treatment of shock, as was the case herein due to a drop in blood pressure. The testator's chart shows that no morphine or any of its derivatives were administered on July

16th. A study of the drugs aforementioned indicates that they may tend to make the patient drowsy but do not produce hypnosis such as is contended herein.

Recapitulating the testimony, Dr. Morrison did not venture an opinion as to the mental capacity of testator on July 16, 1957; Dr. Polley's testimony is not conclusive because he saw the patient only on the morning of July 16th between 7:30 and 8:30 A.M. and did not see testator at all the rest of the day; Dr. Schenthal's testimony is unrealistic since he testified flatly that testator could not have been mentally capable at any time from his admission on July 12th until his death on July 17th, and this testimony is based solely on his hypothesis gathered from medical charts without a personal examination or observation of the testator. It is significant that Dr. Schenthal's testimony in regard to the total mental incapacity of the testator between the dates aforestated is in all respects contradicted by the testimony of Dr. Morrison, wherein the latter testified that on July 15, 1957, he personally examined and observed the testator and concluded that the testator was mentally alert and lucid.

The testimony of Judge Hutchison that the testator was mentally capable of executing a valid last will and testament is corroborated by the two witnesses to the will and the testimony of the testator's mother.

Appellants rely on Succession of Lafferanderie, 228 La. 871, 84 So.2d 442; Succession of Pizzati, 218 La. 549, 50 So.2d 189; and Artigue v. Artigue, 210 La. 208, 26 So.2d 699.

The Succession of Lafferanderie, supra, relied upon by appellants, is not contrary to the conclusion we have reached as to the testamentary capacity of the testator at the time of the confection of the will. Appellants point out that in the Lafferanderie case this Court gave more weight to the medical testimony of attending physicians than to the testimony of the attorney and witnesses to the will. A reading of that case reveals that the reason for such a conclusion was that the attending physician had treated the testatrix for a number of years for senile dementia, the claim for incapacity therein, and had known her condition. Whereas the attorney had seen the testatrix on only the occasion of the making of the will, and the witnesses thereto were parties in interest whose testimony was not conclusive.

Succession of Pizzati, supra, involved the issue of mental capacity as a result of insanity. The facts disclose that five months after the execution of the will, interdiction proceedings were instituted. In that case testatrix was a victim of senile dementia caused by arteriosclerosis and the medical experts who examined the testatrix five or six months after the will was written were unable to positively state

that she lacked testamentary capacity at the time of the execution of her will.

In Artigue v. Artigue, supra, it was there claimed that testatrix was insane and from the evidence presented the court found that the decedent was suffering from a condition that brought about softening of the brain and deterioration of the brain cells and that as a result of that condition the testatrix had evidenced signs of mental incompetence as insanity as early as 1941, or about a year previous to the execution of her will. It is significant that in that case the notary testified that he knew the testatrix and that from his observation on the date the will was made, she was sane on the date of the confection of the will. But an examination of the opinion conclusively reveals that the witnesses to the will knew that the testatrix was of unsound mind and that this fact was deliberately withheld from the notary. We found, and correctly so, that the testatrix was of unsound mind and not capable of testamentary capacity.

Manifestly, we know of no rule of law which makes it imperative upon the courts to resolve the issue of testamentary capacity solely upon the testimony of medical experts. Of necessity, the testimony of medical experts should not be ignored but should be considered and weighed along with all of the facts and circumstances presented in the record. It is equally true that lay testimony must be taken in connection with expert testimony, attaching to it such weight as would guide us in resolving the issue of mental capacity.

In the instant case we cannot say that the trial judge committed manifest error. From a reading of the evidence as a whole, we are justified in concluding that the testator herein possessed legal mental capacity as would authorize the execution of the will in question. We reiterate the oft-stated principle, so firmly embedded in our law and jurisprudence, that there is a legal presumption of sanity at the time of the will's confection and that the person attacking the will has the burden of proving lack of testamentary capacity when the will was executed. Chandler v. Barrett, 21 La.Ann. 58; Kingsbury v. Whitaker, 32 La.Ann. 1055; Succession of Mithoff, 168 La. 624, 122 So. 886; Rostrup v. Succession of Spicer, 183 La. 1087, 165 So. 307; Succession of Edgar, 184 La. 775, 167 So. 438; Succession of Lambert, 185 La. 416, 169 So. 453; Succession of Stafford, 191 La. 855, 186 So. 360; Landry v. Landry, 196 La. 490, 199 So. 401; Artigue v. Artigue, 210 La. 208, 26 So.2d 699; Clanton v. Shattuck, 211 La. 750, 30 So.2d 823; McCarty v. Trichel, 217 La. 444, 46 So.2d 621; Succession of Pizzati, 218 La. 549, 50 So.2d 189; Succession of Lafferanderie, 228 La. 871, 84 So.2d 442. We conclude that this burden has not been adequately met.

For the reasons assigned, the judgment of the lower court is affirmed at appellants' cost.

PONDER, J., absent.