CHASEZ, Judge.
This is an action to annul the probate of an olographic will and declare the instrument invalid on two grounds: (1) that the document was a forgery, and (2) that the testator lacked testamentary capacity by reason of insanity at the time of making the will.
The document under attack was written on January 20, 1959. It revokes all previous wills and leaves the testator’s estate to his two children, “share and share alike,” and names his daughter as testamentary executrix. It further appoints Harry Cabral, Jr. as attorney for the estate and the executrix.
The plaintiff testator’s son, prays that a will executed under LSA-R.S. 9:2442 et seq. on Feb. 3, 1958, be declared the last will and testament of the testator. This document leaves to testator’s daughter only such portion of testator’s property “ * * * as the law requires her to receive and no more”. It leaves to the son “ * * * the residue of my estate, intending thereby to advantage him and to leave him as an extra portion all of the disposable portion of my estate.” It further names the son as executor of the estate and names a different attorney as attorney for the estate.
*694 The defendant in this action filed a general denial, which, as we • read the petition, denies that the disputed document is a forgery, and denies that “ * * * on the date and at the time said purported last will and testament was purported to have been written by decedent, the said decedent was of unsound mind and lacked the physical and mental capacity to make a will.”
The case was tried on the merits and the District Court rejected plaintiff’s demands and dismissed the suit. He has appealed.
The only question presented for our review are questions of fact — whether or not the testament of January 20, 1959 was written by the decedent, and, if so, whether or not the testator was sane at the time it was written.
Plaintiff-appellant at least subordinates the forgery allegation, if not actually abandoning the claim. In any case the charge of forgery is not supported by the record.
In addition to the original probate which was admitted in evidence, there was the testimony of an attorney, Harry Cabral, Jr., who was sent for especially to assist the testator in the drawing of this will in olo-graphic form and was present throughout the writing, and of the testator’s daughter, Mrs. Cecilia Bisso Slatten, who was present during the writing of the major portion of the will and saw her father sign it at its conclusion. Further, two reputable examiners of questioned documents from other states established by scientific tests and comparisons that the instrument was wholly written, dated and signed by the testator. The integrity and ability of these witnesses stands unassailed.
The expert produced by the appellant herein likewise stated that the will was in the handwriting of the decedent and he questions only the signature of decedent. However, he ultimately stated that the signature was the decedent’s, but suggested that it was not written at the same time the will was written, which of course would have no effect on the validity of the will'.
The remaining question, whether or not the testator had the necessary mental capacity when he wrote the document, is actually the central issue in the case.
The Trial Judge found that he did, and our examination of the extensive record (nearly 1000 pages of testimony) in this case does not convince us that he erred in so concluding.
To quote from his reasons for judgment:
“The evidence establishes beyond question that the testator was ailing and hospitalized when he wrote the will under attack. But he was not then in such poor physical condition as to confine him to bed. The evidence is beyond doubt that he was out of bed and seated in a chair when he wrote the will. Plaintiff’s charge that at the time of the making of the will his father lacked physical capacity is not supported by any evidence. On the question of mental capacity the court has carefully considered the hospital record, the testimony of physicians, nurses, relatives and friends and in the mass and aggregate could find no persuasive evidence that the testator was not fully aware of his actions when he wrote the will under attack. • On the contrary, the hospital record and other evidence establish the fact that the testator was fully competent on the morning of January 20, 1959, to write his will, and to fully appreciate his responsibilities as a father.
“There is no satisfactory evidence that on January 20, 1959, or thereabouts, the late William A. Bisso was in such mental condition as to make necessary the application of the lucid interval doctrine. The presumption of sanity and of testamentary capacity cannot be overcome by conflicting evidence. Succsn. of Lambert, 185 La. 416, 169 So. 453; Succsn. of Mithoff, 168 La. 624, 122 So. 886. No man should be deprived of testamentary *695 power without positive overwhelming proof of insanity. McCarty et al. v. Trichel et al., 217 La. 444, 46 So.2d 621. Such proof is not to be found in this record.”
Plaintiff-appellant argues that Article 2932 of the Code of Civil Procedure imposed upon the defendants the burden of proving not only the authenticity of the will as to form, but also proving the sanity of the testator at the time of its execution. In other words, they argue that insanity is to be presumed.
Clearly, under the substantive provisions of the Civil Code and our jurisprudence relating to the presumption of sanity on the part of a testator, this is unacceptable.
Counsel further argues that the burden of proving sanity has shifted to defendants by virtue of Article 1788(9) of the Civil Code. The presumption of incapacity under the Article, however, arises only upon proof of general and habitual insanity, existing at the time that the will was •drawn, for it is only insanity actually affecting the execution of the will that invalidates it.
There is no doubt that the testator suffered from arteriosclerosis, nor is there doubt that his mental condition was such that he lacked testamentary capacity for a time prior to his death, and that, on numerous occasions, his behavior was such as to attest to an irrational mind. But be that as it may, there is doubt that his mental condition was such on January 20, 1959, when he wrote the will under attack.
None of the doctors and none of the nurs•es were present in the room when the will was written. None of the hospital records indicate the existence of any degree of insanity at the time the will was executed.
Numerous opinions as to Captain Bisso’s testamentary capacity appear in the record, hut the crucial opinions, those of the treating physicians, are voiced in terms of probability only and lack that degree of positive and overwhelming certainty that our jurisprudence requires.
To quote from McCarty v, Trichel, 217 La. 444, 46 So.2d 621:
‘“The fact that a man is subject to disease of the brain is, per se, no better reason for depriving him of testamentary power than would be his having a disease of the liver. * * * To wrest a man’s property from the person to whom he has given it, and divert it to others from whom he has desired to withhold it, is a most violent injustice, amounting to nothing less than post-mortem robbery, which no court should sanction unless thoroughly satisfied that the testator was legally incapable of making a will.’ ” * * * “Multiple cases have reached this Court involving the question of testamentary capacity and it has been in rare instances only — where the evidence of insanity was positive and overwhelming — that the wills were annulled and voided, * * * This is particularly true where the medical evidence is conflicting. Interdiction of Escat, 206 La. 207, 19 So.2d 96; Chandler v. Barrett, 21 La.Ann. 58,99 Am.Dec. 701; Kingsbury v. Whitaker, 32 La.Ann. 1055, 36 Am.Rep. 278; Godden v. Burke’s Ex’rs, supra (35 La.Ann. 160); Succession of Bey, 46 La.Ann. 773, 15 So. 297, 24 L.R.A. 577; Succession of Jacobs, 109 La. 1012, 34 So. 59 (Emphasis supplied).”
The testator, Captain William A. Bisso, Sr., had been an unusual and somewhat eccentric individual all of his life. As happens to a great many persons he suffered from senility in the latter years of his life (he was 86 years old when he died), brought on by his arteriosclerotic condition. The effect of this disease is to restrict or cut off the flow of blood to various parts of the body, including the brain. Without the 'circulation of blood the tissue dies and cannot be rejuvenated.
*696 The captain attended the Kentucky Derby in the Spring of 1958, and on his return exhibited symptoms of mental disorder. Attempts to have him enter a hospital were without success until December 17, 1958, when he was persuaded to go to Baptist Hospital here in the City of New Orleans. The hospital record shows an admit note to the effect that the captain’s chief complaint was “dizziness and weakness,” for which various tests were to be made to determine the cause.
It appears that he was in very poor physical condition, and was also mentally disturbed and confused. He was suffering from malnutrition and severe anemia; he was later found to have diabetes. Though there was some evidence of generalized arteriosclerosis (he was over 80 years old at this time), his behavior was affected by these other ailments as well.
Fie received treatment m the form of numerous infusions when first admitted to the hospital and, the record reflects, on January 20, 1959, his physical condition was fairly good, “as good as it could be,” representing a considerable improvement from the time of his admittance.
Not one of the two treating physicians who were available to testify could or would state positively that the captain’s mental condition on that date was such that he lacked testamentary capacity.
Two psychiatrists testified on behalf of plaintiff. Only one actually saw and interviewed the captain, and then only once, for a few minutes, some six months to a year after his admittance to the hospital. The second psychiatrist never saw the captain and based his opinion on the hospital record, interviews with various persons who had seen the captain, and the testimony taken during the trial, all of which included a period of more than two years after the date of the will.
The nurses who were on duty with Captain Bisso during the periods in question testify without exception that the day before, the day of, and the day after execution of the will, Captain Bisso ate well,, slept well, and in general had very good' days during this period of time.
Considering all of the circumstances involved, we do not believe that the burden of proof in this case, which in our opinion clearly rests upon the plaintiff, has been sustained.
For the foregoing reasons the judgment of the Trial Court is affirmed. All costs of this proceeding to be paid by plaintiff-appellant.
Affirmed.