214 So.2d 248 (1968)
Succession of Mrs. Laurence LOPEZ, divorced wife of Armand B. CHOPIN.
No. 3154.
Court of Appeal of Louisiana, Fourth Circuit.
July 1, 1968.
Rehearing Denied October 7, 1968.
*249 Benjamin E. Loup, Theodore A. Mars, Jr., New Orleans, for Mrs. Charline Chopin Baudier and Mrs. Lynne Chopin Thomas, appellants.
John B. Hattier, Beuker F. Amann, New Orleans, for Mrs. Edna Lopez Amann, appellee.
Before YARRUT, CHASEZ, and BARNETTE, JJ.
BARNETTE, Judge.
This is an appeal from a judgment which ordered probated, over opposition, the last will and testament of Mrs. Laurence Lopez, divorced wife of Armand B. Chopin. The opponents of the will, Mrs. Charline Chopin Baudier and Mrs. Lynne Chopin Thomas, granddaughters of the decedent, attacked its validity on two grounds. First they alleged that it did not meet certain of the formal requirements of LSA-R.S. 9:2442 pertaining to statutory wills. Second they contended that the decedent did not possess the proper testamentary capacity to execute a last will and testament. Judgment was rendered against them rejecting their opposition, and they reurged these contentions on appeal.
Mrs. Laurence Lopez Chopin was admitted to Montelepre Hospital on December 14, 1965, suffering from what was later described by her physician as a cerebral vascular accident, or in layman's terms, a stroke. On December 21, 1965, while a patient in the hospital, Mrs. Chopin executed *250 the last will and testament which is now under attack before John B. Hattier, notary public. The pertinant parts of the will are as follows:
 "STATUTORY WILL
 "I, MRS. LAURENCE M. CHOPIN, divorced wife of A. B.
 CHOPIN, do hereby declare the following to be my last will and testament, revoking
 all prior wills made by me.
 [Dispositive sections omitted]
 "Since I have had a stroke, which has effected my ability to write,
 I have to make my will with a mark, although I certify that I have read all of the above
 and it is as I have desired it to be.
 
 MRS. LAURENCE M. CHOPIN
 "Signed and declared by the testatrix above-named in our presence
 to be her last will and testament and in the presence of the testatrix, who understands
 the contents of the will, has signed with her mark, and the Testatrix having declared that
 [End of first page]
 [Beginning of second page]
 she is not able to sign her name because of the physical disability which has left
 her unable to write, but that she is able to read and does make her mark as the sign
 of her intent that this be her last will and testament, and in the presence of the
 Testatrix and of each other, we have hereunto subscribed our names on this 21st day.
 of December, 1965.
 
 MRS. LAURENCE M. CHOPIN
 WITNESSES:
 
 
 John B. Hattier, Notary Public"
*251 By the terms of this will Mrs. Chopin left two-thirds of all of her property both movable and immovable to her sister, Mrs. Edna Lopez Amann. She left the other one-third of her property to her only child, Charles Henry Chopin. She further stipulated that in the event her son, Charles Henry Chopin, should predecease her, her entire estate should then go to her sister, Mrs. Amann.[1] Her son did predecease her.
We treat first the second of the two areas of opposition to the will, namely the question of Mrs. Chopin's testamentary capacity. Opponents argue that the situation which is presented in this case involves not a question of the sanity of the decedent, but actually her mental ability, due to her physical condition, to confect a valid will. In this they argue that the case is res nova.
We think the opponents are attempting to make what seems to us to be a distinction without a difference. Whether we speak of the testatrix's sanity or mental ability to understand the import and effect of her actions, we are, in the final analysis, speaking of her mental capacity necessary to make a valid will. The trial judge's interchangeable use of the words "insanity" and "mental capacity" in his reasons for judgment does not lessen the force of his decision that opponents failed to overcome the presumption that Mrs. Chopin had the sufficient mental capacity to make a valid will.
The cases are legion which hold that testamentary capacity is presumed and the persons attacking a will have the burden of proving lack of capacity at the time the will was executed. Succession of Holland, 236 La. 8, 106 So.2d 697 (1958); McCarty v. Trichel, 217 La. 444, 46 So.2d 621 (1950); Succession of Stafford, 191 La. 855, 186 So. 360 (1939); Rostrup v. Succession of Spicer, 183 La. 1087, 165 So. 307 (1936); Succession of Papa, 192 So.2d 854 (La.App. 4th Cir.1966).
Here the only proof as to Mrs. Chopin's lack of capacity was the testimony of her treating physician to the effect that as a result of her stroke her thought processes were in his opinion slowed. His testimony however was indeed, as stated by the trial judge, "voiced in terms of probability only and lacked any degree of positive and overwhelming certainty that our jurisprudence required."
The testimony of the two witnesses to the will, Mrs. Lillian Duggan and Mrs. Lillian Billodoux, revealed that it was their observation that Mrs. Chopin did have sufficient mental capacity to make a will. Mrs. Billodoux had been employed to sit with Mrs. Chopin for 12 hours a day during her entire hospital stay. Mrs. Duggan was a close personal friend of the testatrix of longstanding. Certainly the testimony of these two impartial lay witnesses must be accorded due consideration in determining the testatrix's true mental capacity. Succession of Holland, supra; Succession of Guidry, 160 So.2d 759 (La.App.3d Cir. 1964).
For the want of any clear and convincing proof regarding her lack of capacity we must decide, as did the trial judge, that Mrs. Laurence M. Chopin had the necessary testamentary capacity when she placed her mark upon her will.
As previously stated, the first attack upon the will was based on the allegation that it does not meet the formal requirements for a valid statutory will as set out in LSA-R.S. 9:2442. In particular it is alleged that the will is not signed by the testatrix at the end of each page; that the signatures of the notary and the witnesses do not appear at the end of the will; and *252 that the testatrix made no declaration to the notary that she was unable to sign her name.
LSA-R.S. 9:2442 reads as follows:
"In addition to the methods provided in the Louisiana Civil Code, a will shall be valid if in writing (whether typewritten, printed, mimeographed, or written in any other manner), and signed by the testator in the presence of a notary public and two witnesses in the following manner:
(1) In the presence of the notary and both witnesses the testator shall signify to them that the instrument is his will and shall sign his name on each separate sheet of the instrument. If, however, the testator declares that he is not able to sign his name because of some physical infirmity, express mention of his declaration and of the cause that hinders him from signing his name must be made in the act, and he shall then affix his mark on each separate sheet of the instrument.
(2) The notary and both witnesses must sign their names at the end of the will in the presence of the testator and in the presence of each other.
(3) The foregoing facts shall be evidenced in writing above the signatures of the notary public and witnesses and the testator at the end of the will. Such declaration may be in the following form or a form substantially similar thereto: `Signed on each page (or if not signed by the testator, the statement of his declaration that he is not able to sign his name and of the physical cause that hinders him from signing) and declared by testator above named, in our presence to be his last will and testament, and in the presence of the testator and each other we have hereunto subscribed our names on this ______ day of ______, 19___.'"
The first of opponents' objections to the form of the will, namely, that the will is not signed by the testatrix at the end of each page is easily dismissed. We find the provisions of the statute simply require that the testatrix shall sign on each separate sheet of the instrument (or affix her mark to each separate sheet when, as in the case here, she is physically unable to sign her name). Thus the requirement that opponents attempt to impose that this mark be at the end of each page is not one found in the statute itself. Thus when as here the mark is placed on each sheet the statute has been satisfied in this regard. This is particularly true in our case as the marks are both after the dispositive portion of the will.
The second objection as to form is that the signature of the notary and the witnesses do not appear at the end of the will. As to this argument we can only answer that the testatrix complied to the letter with the provisions of the statute. The end of the will has been interpreted by our Supreme Court in Succession of Eck, 233 La. 764, 98 So.2d 181 (1957), as being that place on the will where the dispositive provisions terminate, the dispositive provisions being those relating to the testamentary dispositions. Hence when the statute requires in section (2) that the notary and both witnesses must sign at the end of the will, it requires that they sign at the end of the dispositive portion of the will. Section (3) of the statute then provides that the foregoing facts (referring to the attestation clause) shall be evidenced above the signatures of the notary public and witnesses and the testator at the end of the will. Hence as a matter of physical construction a proper will will follow in this order: dispositive portion, attestation clause, then signature of the notary and the witnesses, which is exactly the order followed here. The only variation here is an "extra" signature, if you will, by the testatrix. As we have decided above this "extra" signature fulfilled a vital function in *253 meeting the "each separate sheet" requirement of section (1) of the statute, certainly it cannot destroy the efficacy of the will in any other respect. Perhaps what has confused opponents is that the signature of the notary and witnesses is located on a separate page from the dispositive section. This is certainly not a fatal defect, if a defect at all. Here the attestation clause began on the same page as the dispositive section, and immediately following it, but out of necessity was continued on the second page; after it followed the signature of the notary, testatrix and witnesses. This is not in conflict with any of the provisions of LSA-R.S. 9:2442, and does not invalidate the will.
The third of opponents' objections to the form of the will presents a more difficult question. They contend that the testatrix made no declaration to the notary that she was unable to sign her name.
Actually this objection is not one which involves the form of the will itself. It relates more to the manner in which the will was actually prepared, notwithstanding the statements of compliance with the law, written into the will itself.
Clearly the statute does envision that the testatrix shall declare to the notary that she is not able to sign her name, if such be the case, and then this declaration must be mentioned in the will. We see that express mention that such a declaration was made is contained in the act, as required by the statute. However from the testimony of the notary himself we have some doubt that the testatrix did actually make this declaration.
We of course realize that a declaration in the sense employed here does not need be of necessity a verbal statement. Intent of a testator whose ability to speak is seriously impaired can only be indicated by a sign, or a gesture, such as a nod, a grunt, a series of eye movements or the like as was done by the testatrix in this case. Of necessity this must suffice where the mental capacity is evident. The question does remain, however, was even one of these things done, notwithstanding the statement of such incorporated in the will.
What causes us particular concern are the statements of the notary that he had never met the testatrix until he walked into her hospital room, unsigned will in hand. He had been advised previously by her sister, incidentally the principal legatee of the will, of what the testatrix's intentions were. He saw that the testatrix was virtually immobile in bed and commenced to place the will before her face and read it to her paragraph by paragraph. He stated: "[A]nd when I concluded I asked her if this was her intentions, and I don't recall whether she nodded or grunted, to be perfectly frank with you, and she proceeded to put her X mark on it with the paper down like this (demonstrating), because she could not move about." He also stated in answer to a question asking if Mrs. Chopin was able to speak at all: "To my knowledge, I couldn't tell. She didn't attempt to convey any messages to me."
What is even more disturbing is the realization that there are few indications that the provisions of the will itself were according to the testatrix's wishes. Here was an individual who was extremely limited in her ability to communicate, signing a will prepared at the direction of the legatee in the presence of a notary who was totally unfamiliar with her circumstances and desires. Add to that the fact that the notary admittedly had little or no communication with her to determine if it was drawn in accordance with her wishes. Further her attending physician testified that in his opinion she could respond to questions of a simple nature, but not to questions that would require reasoning. If we had before us only the testimony of the notary we would have grave reservations about the validity of the will. However we *254 do have the benefit of the testimony of the two witnesses who were familiar with the entire sequence of events leading up to the signing of the will.
The first, Mrs. Duggan, the long-time friend of the decedent, stated repeatedly that the testatrix was capable of reading the will and did do so. Mrs. Duggan stated several times that the testatrix "shook her head," and "nodded," when asked by the notary if she read the will and if it was in accordance with her wishes.
Mrs. Billodoux, the other witness, stated that the notary read the will to Mrs. Chopin and to the best of Mrs. Billodoux's knowledge Mrs. Chopin agreed with everything included in it and that it was the way she wanted it. Mrs. Billodoux made no reference to any particular method by which Mrs. Chopin indicated her intention, other than of course affixing her mark twice to the will.
In the final analysis we must emphasize that the document clearly stated that it was her last will and testament, it was unequivocal in its dispositive conditions, and it was, as such, signed by the decedent. Thus as we have decided that Mrs. Chopin had the requisite testamentary capacity when she signed the will, we can only conclude that it contained her wishes as to the disposition of her property, and accurately reflected the manner in which it was prepared, including the statement concerning the declaration of testatrix's inability to signall in accordance with the statutory authority. We must conclude that had it not expressed her wishes she would not have affixed her marks to it.
For the reasons hereinabove stated, the judgment dismissing the opposition to the probate of the last will and testament of Mrs. Laurence M. Chopin is hereby affirmed. Appellants are assessed all cost of this appeal.
Affirmed.
NOTES
[1] This latter stipulation was written without consideration for her son's two children, opponents herein, who, under LSA-C.C. art. 895, represent him as forced heirs in his mother's estate. This issue is not before us in this appeal, since the appeal is limited to the opposition to the probate of the will itself.