130 So.2d 702 (1961)
Succession of Nora BRADFORD.
No. 9460.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1961.
Rehearing Denied June 1, 1961.
*703 Love & Rigby, Shreveport, for appellant.
Brown, Fleniken & Dormer, Shreveport, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
This appeal is prosecuted from judgments sustaining the validity of the last will and testament of the decedent, Nora Bradford, and approving and homologating the final accounts of the executrix and discharging her from her trust. The attack upon the will is directed to the alleged want, or lack, of testamentary capacity on the part of the testatrix at the time of its execution.
The rules of law applicable to actions of this character are well established. For instance, under the provisions of LSA-C.C. Art. 1475, one must be of sound mind to make a donation, either inter vivos or mortis causa. Testamentary capacity is always presumed until the contrary is affirmatively established by satisfactory and convincing evidence. Therefore, a legal presumption exists in favor of the validity of a will. Succession of Franz, 232 La. 310, 94 So.2d 270; Succession of Lafferanderie, 228 La. 871, 84 So.2d 442; Succession of Pizzati, 218 La. 549, 50 So.2d 189.
The issue now under consideration is therefore one of fact. The will, by private act, nuncupative in form, was dated January 16, 1948. At the time, the testatrix was 91 years of age-she died ten years later, January 19, 1958, at the age of 101 years. By the terms of her will, a daughter, Exie Bradford, was bequeathed one-third of her property, consisting of real estate valued, following her death, at $18,847.78 and a bank account of $7,487.27. The remaining two-thirds of the estate was bequeathed to the testatrix' eight children, including Exie Bradford, share and share alike. The will was probated February 6, 1958, at the instance of Exie Bradford, who was appointed and confirmed as executrix. The action to annul the will was instituted by the remaining seven children.
Plaintiffs, in the action to annul the will, specifically allege that the testatrix, at the time of the execution of the will, was purportedly suffering from senile dementia so as to render her incapable of understanding the nature of her act in making said will; that the testatrix was extremely feeble and almost completely helpless, deaf, childish, and unable to care for herself; and, hence, that the will was null and void.
The trial court, in our opinion, very correctly appraised and evaluated the testimony and concluded that the testatrix was, at the time of the execution of her will, of sufficient mental testamentary capacity. In commenting on the evidence and in formulating its conclusions, the court stated:
"The evidence shows that throughout decedent's life prior to 1946 she was a very active and shrewd business woman; she handled her own business, and never talked to her children about what she had or what she was doing. In 1946 she had reached the age of 89 years and had become feeble; her eyesight was bad; and she then `turned over her business' to her daughter Exie Bradford, and from then on this daughter would carry her mother from place to place, and looked after her temporal needs. Decedent owned a large house, which was made into apartments. Decedent resided in one of the apartments and either one or two of her children lived in other parts of the house. Exie Bradford lived nearby in a separate building.
"The opponents, children of decedent, testified that decedent did not know them and when they spoke to her she would inquire of the speaker `who is that?' and upon being told, would then *704 converse with them. These children also testified that as far back as 1946 their mother had lost her mind, but gave no facts from which the Court was justified in believing the statement to be true. None of the children, including Exie, knew that their mother had made a will until after her death. The family, including decedent, had used Mr. Otis W. Bullock as their attorney over a period of many years, and after Nora Bradford's death they came to Mr. Bullock's office for the purpose of settling up the estate, and on their arrival they were informed by Mr. Bullock that he had decedent's will in his office.
"We think perhaps Exie Bradford may have known that her mother had executed a will. She denied the matter, but testified that on January 16, 1948 she had to go to Shreveport from Belcher, Louisiana to visit a doctor; that her mother desired to come to Shreveport with her and did so, and was put out of the taxicab at Gamm's Store, where the family did their trading, and that Exie would return there later in the day for her mother; that she did so, and did not know what Nora did during the day.
"Mr. Otis Bullock, the attorney, testified that he had represented decedent's family since 1937; that in January 1948 Nora Bradford came to his office to see about making a will; that no one was present during the discussion. He states that decedent advised him that she owned a half interest in certain property and that her deceased husband had inherited certain property in which she had no interest, and that she wanted to give a part of her property to her daughter Exie; that he explained to her the law relative to forced heirship, and she then stated that she wanted to give Exie all that the law allowed. Mr. Bullock then called Mrs. Hassler, his secretary, and gave her the data to prepare the will. After the will was prepared she came back into Mr. Bullock's private office where he and Nora Bradford had been in conversation; he then explained the will to Nora; then they repaired to the library and called in the witnesses, where the will was finally read and signed; that he had seen Nora Bradford in 1952, when she executed an oil and gas lease to Mr. Trahan, and had seen her in the fall of 1957; that while Nora Bradford was old, hard of hearing, and nearly blind, she was in possession of her faculties.
"There were several other witnesses who transacted business with Nora Bradford respecting oil and gas leases, farm leases, etc., and all of them testified that Nora Bradford seemed to know what she was doing. There is no evidence by opponents pinpointing Nora Bradford's mental condition on January 16, 1948, other than that she was old and infirm, hard of hearing, and nearly blind. The evidence by proponents proves conclusively that on January 16, 1948 Nora Bradford had mental testamentary capacity."
We may add, too, that we were also greatly impressed with the testimony of Mr. Bullock, an active, distinguished, learned, and honorable member of the Shreveport Bar for half a century.
In determining the validity of a will, the trial court's findings of fact are entitled to great weight and should not be disturbed unless clearly or manifestly erroneous. Succession of Franz, supra; Succession of Pizzati, supra; McCarty v. Trichel, 217 La. 444, 46 So.2d 621
The true test of testamentary capacity is whether, at the time of making a will, the testatrix is of sufficient mind to understand the nature of the testamentary acts and appreciate their effects, or the ability to comprehend the condition of her property and her relation to those who may naturally expect to become the object *705 of her bounty. Kingsbury v. Whitaker, 32 La.Ann. 1055; Succession of Bey, 46 La.Ann. 773, 15 So. 297, 24 L.R.A. 577; McCarty v. Trichel, supra; Succession of Moody, 227 La. 609, 80 So.2d 93; Succession of Lafferanderie, supra.
We are convinced from the evidence, as was the trial court, that the testatrix, at the time of the execution of the will, well knew the character of the instrument and the nature and effects of the dispositions made, and that, consequently, her mental capacity met the test required for the validity of the will.
Opposition was made to the provisional and final accounts filed by the executrix wherein it is alleged (1) that the executrix did not include all of the assets of the estate in either of the accounts in that, during the years 1948-1958, she deposited funds of Nora Bradford in her own personal account; (2) that the payment of certain debts for which the executrix claims reimbursement were paid with funds belonging to the succession and not to the executrix' personal account; and (3) that the attorney's fees for the defense of the suit to annul the will should be chargeable to Exie Bradford individually rather than to the succession.
Objections (1) and (2) are primarily directed to the contention that the executrix had, in her personal accounts, funds of the decedent and that, accordingly, the accounts rendered did not properly reflect the condition of the estate, nor that the executrix was due any reimbursement for the expenditures allegedly made by her personally. The onus is, of course, on the executrix to establish, prima facie, the correctness of her accounts (Succession of Caranne, La.App. 1st Cir., 1933, 147 So. 562), particularly as to the items opposed. Succession of Dougart, 30 La.Ann. 268; Succession of Moore, La.App., Orleans 1946, 28 So.2d 465. Thus, it is contended, under contentions (1) and (2) of the opposition, that the executrix had, in her personal accounts, through accumulations over the years 1948-1958, funds belonging to the estate, and that it was from these funds of the estate that the executrix paid the items for which she sought reimbursement.
The record establishes that Exie Bradford had, in three bank accounts in her name, deposits aggregating approximately $13,500. As to the sources of her income, she was thoroughly examined and cross-examined. Her income was shown to have been from such sources as oil and gas leases and production, farming operations, including the sale of livestock, her employment, and the allotments made by and received from sons in the military service. The opposition, in the absence of positive proof, is relegated to that of doubt as to the sources and reality of the executrix' personal income and assets.
With all of the evidence before him, the trial court concluded:
"* * * there is no indication that the money deposited to the credit of Exie Bradford is money belonging to the decedent, Nora Bradford. According to the testimony on the trial of the suit to annul decedent's will, it appeared that Exie Bradford had looked after Nora Bradford, who was near 100 years of age, for a period of approximately ten years prior to Nora's death in 1958. Exie Bradford's bank books were produced, and we note that she had on deposit to her credit in 1949 upwards of $3,000, with deposits prior thereto having been made in about the same manner as were made during the ten years she looked after Nora Bradford. * * *"
From our study of the record, we find ourselves in accord with the lower court's conclusions that the funds on deposit in the bank, as aforesaid, are the property of Exie Bradford and not funds of Nora Bradford.
The question of the allowance of the attorney's fees as a charge against the succession *706 merits serious consideration. There is no question presented as to the reasonableness of the fee. It is contended, however, there should not have been a charge made against the succession for that portion of the fee which was for defending the suit to annul the will.
The expenses of administration of an estate incurred by an executor for the affixing of seals, for the inventory, for the accounts and other charges relative to his functions, are defrayed out of the succession. LSA-C.C. Art. 1682. It is ordinarily the duty of a person named as testamentary executor to offer the will for probate, to defend it from attack, and to endeavor to have it executed, and, as that duty results from the act of the testator, the expenses, such as fees of counsel and costs of court incurred in its discharge, should generally be borne by the testator's succession. Sterlin's Executor v. Gros, 5 La. 100, 107; Succession of Heffner, 49 La.Ann. 407, 415, 21 So. 905; Fenner v. Succession of McCan, 49 La.Ann. 600, 21 So. 768; In re Marshall's Estate, 149 La. 300, 88 So. 914; Succession of Filhiol, 123 La. 497, 49 So. 138.
Nevertheless, the contention is made that an executor should not be allowed to charge the succession for attorney's fees for services rendered individually to him where the services are not for the benefit of the succession or for him in his capacity as executor. Cited in support of this proposition are the cases of Girard v. Babineau, 18 La.Ann. 603, 604; Succession of Vatter, 192 La. 657, 188 So. 732. In the former case, it was pointed out that the court held "The attorneys could not claim any amount from the succession for services rendered in the furtherance of the executor's individual claim." And, in the latter case, it was held that an estate is liable for all costs incurred by an executor in endeavoring to sustain the validity of a will which is afterward declared void, but, where the heirs to an estate institute a direct action against the legatees to have the will annulled, and are successful, the estate is not chargeable with the costs and charges incurred by the legatees in their attempt to sustain the will.
The rule generally recognized in other jurisdictions is that an executor or an administrator cannot be allowed, as against the estate, the costs and expenses of litigation or the employment of counsel for his own individual benefit, where he has a special interest as legatee, devisee, heir, or distributee, to protect which he contests against others. 33 C.J.S. Executors and Administrators § 226d, p. 1223. The fact that the executor was, or was not, himself, interested under the will which he sought to establish may be determinative of the question whether his efforts to sustain the will were intended for the benefit of the estate. So, the allowance of attorney's fees has sometimes been refused upon a finding that, even though the administrator or executor was under a duty to defend the will, his acts were primarily in his own individual interest. 40 A.L.R.2d pp. 1431-1432, WillsAttorney's Fees.
Under the jurisprudence of this State, the rule is well settled that an attorney representing particular heirs or claimants in a succession proceeding has no claim against the estate for his services, even though such services benefited the other heirs. Succession of Guichard, 225 La. 315, 72 So.2d 744; Succession of Russell, 208 La. 213, 23 So.2d 50; Succession of Rosenbrock, 175 La. 1049, 145 So. 4; Succession of Kernan, 105 La. 592, 30 So. 239.
In the instant case, it may be pointed out that the action instituted for the annulment of the will by the remaining seven children and heirs of the decedent was directed against Exie Bradford personally; that she was made a defendant in her individual capacity and not in her representative capacity as executrix of the succession. Moreover, in the appearances made by the defendant through motions and exceptions, and by an answer to the *707 merits of plaintiffs' demands, defendant, Exie Bradford, appeared in her individual capacity. In that capacity, the demands were resisted and tried. Furthermore, Exie Bradford, as a legatee under the will, was the only person whose interests were at stake or in contest in the litigation, or who stood to win or lose as a result thereof. To the estate, as such, it was immaterial and unimportant whether the will was sustained, but it was of vital importance to the opponents, as well as to the defendant personally.
We are of the opinion, therefore, that the succession should not be charged with that portion of the attorney's fee which was incurred by the defendant, Exie Bradford, in sustaining her interest under the will. The fee, as allowed and as to which, as concerns the amount, no objection is made but which is concededly reasonable, was $2,000, $500 of which was recognized as reasonable for the fee of Bullock & Bullock for the probation of the will. The remainder of the fee, $1,500, was allowed not only for the presentation, filing, and homologation of the provisional and final accounts, and for the trial of the opposition as to the allowance of specific items, but also for the defense of the action brought by the other heirs against Exie Bradford, in her individual capacity, to annul the will and, consequently, the bequest made to her. For the first of these, an attorney's fee is properly chargeable against the succession. As for the latter, the fee is a matter of a personal obligation of the defendant, Exie Bradford.
We are impressed, from our review of the record, that a proper division of the fee allowed would be one-half as a charge against the succession, and the other half chargeable to the defendant in her individual capacity. The judgment homologating the final accounts should be accordingly amended.
For the reasons assigned, the judgment upholding the validity of the will of decedent is affirmed, and the judgment homologating the executrix' final account is amended by reducing the attorney's fee as a charge against the succession by the sum of $750, and, as thus amended, that judgment is likewise affirmed.
Amended and affirmed.

On Application for Rehearing
PER CURIAM.
In an application for a rehearing, attention is directed to an error in our opinion and decree relating to the allowance of the attorneys' fees for the executrix.
The opinion recited the fees had been approved in the sum of $2,000, whereas, the amount was $2,500, $500 of which had been approved for and paid Bullock & Bullock, leaving a balance of $2,000 for Wm. J. Fleniken. An error obviously resulted in the calculation of the portion of the fee chargeable to the succession.
To rectify this erroneous calculation, our original decree is corrected so as to reduce the attorneys' fees as a charge against the succession by and to the sum of $1,250, and, as corrected, is reinstated.
The motion for a rehearing is therefore denied.