305 So.2d 704 (1974)
Succession of Mabel P. KELLY.
No. 12461.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1974.
Madison, Files, Garrett, Brandon & Hamaker by James P. Madison, Bastrop, Jones, Blackwell, Chambliss, Hobbs & Henry by James A. Hobbs, West Monroe, for Mrs. Doris P. Johnston, proponent-appellant.
Kidd & Katz by Paul Henry Kidd and Stephen J. Katz, Monroe, for Dewey Kelly, opponent-appellee.
Before AYRES, BOLIN and PRICE, JJ.
AYRES, Judge.
From a judgment declaring a statutory will of Mrs. Mabel P. Kelly executed on August 25, 1972, to be invalid for want of testamentary capacity; setting aside the order for probate; and assessing Mrs. Doris P. Johnston, the executrix, with all costs, Mrs. Johnston prosecutes this appeal.
Mrs. Kelly, a respected schoolteacher in Morehouse Parish until her retirement, had *705 previously prepared and executed an olographic will in 1964 in which she had made several special bequests and had named her natural brother, Dewey Kelly, residuary legatee. Another olographic will was written by Mrs. Kelly in 1969, but never signed. On August 25, 1972, she executed the statutory will, presently being opposed herein by her brother, in which she substituted Hillview Nursing Home, Inc., as the residuary legatee.
Mrs. Doris P. Johnston, the administrator and co-owner of the nursing home, was named the testamentary executrix without bond. She offered the will for probate which was subsequently met with an opposition proceeding filed by Dewey Kelly based on the following grounds: (1) the signature on the will was not that of the testatrix; (2) the legacy to the nursing home is prohibited under the provisions of Article 1489 of the Louisiana Civil Code; and (3) the testatrix lacked the requisite mental capacity to execute a valid will. The judge in the lower court found the will of Mrs. Kelly was invalid for the reason that she lacked testamentary capacity.
The issues presented on appeal are whether the lower court erred in its finding that Mrs. Kelly was not legally capable of executing the will in question and whether or not it was error or abuse of discretion to assess Mrs. Johnston personally with the costs of the trial of the opposition. A motion to dismiss the appeal has also been filed by the opponent to the will urging again that the legacy to the nursing home is void under Louisiana Civil Code Article 1489.
While testamentary capacity is always presumed, the party attacking the will may prove by satisfactory and convincing evidence that the testator was not of a sufficiently sound mind to fully comprehend the nature of the testamentary acts and to appreciate their effects at the time of the making of the will Cormier v. Myers, 223 La. 259, 65 So.2d 345 (1953); Artigue v. Artigue, 210 La. 208, 26 So.2d 699 (1946); Succession of Bradford, 130 So.2d 702, 703-704 (La.App., 2d Cir., 1961); Succession of Herson, 127 So.2d 61, 66 (La.App., 1st Cir., 1961).
"Testamentary capacity is a question of fact and more specifically the presence of such requisite condition at the precise time of making the will, the issue being one which must be decided in the light of the attending circumstances in each individual case. In reaching a conclusion on such issue courts will consider the physical and mental condition of testator not only at the time of making the will but also prior and subsequent thereto since the actions, condition of testator before and after, as well as at the time of making the will, are of probative value in determining testamentary capacity."
Succession of Herson, supra.
Mrs. Kelly had been suffering from several physical ailments for a number of years. In 1963, at the age of 75, she was diagnosed as having breast cancer for which she underwent surgery. She also suffered from arthritis, arteriosclerosis, chronic kidney and urinary-tract infection and diabetes.
The record indicates that in April of 1972 Dr. Harold McCormick recommended that Mrs. Kelly be placed in a nursing home. Mrs. Kelly's brother, Dewey Kelly, made arrangements for her at Hillview Nursing Home in Bastrop, Louisiana. On July 3, 1972, Mrs. Kelly signed a statement that should she become incapable, she did not want to be removed from this nursing home and then on July 21, 1972, she gave a general "Power of Attorney" to Mrs. Johnston. The statutory will in dispute was executed while in the nursing home on August 25, 1972, as aforesaid, ten days subsequent to the filing of the documents incorporating Hillview Nursing Home. An interdiction proceeding had been instituted against Mrs. Kelly by her brother in October of 1972 and was again filed in *706 January of 1973, but on both occasions Mrs. Kelly had been too ill for the hearing to proceed. She died on January 30, 1973, at the age of 84, the assigned cause being cardiac arrest.
There is conflicting evidence as to Mrs. Kelly's physical and mental state during the critical time in which she executed the will. Mrs. Johnston, Dr. John M. Coats, IV, and several of the personnel at the nursing home all testified that while aged and infirm, Mrs. Kelly was mentally alert. Contrary to this testimony, the brother of Mrs. Kelly, his wife, Dr. McCormick, and other persons close to Mrs. Kelly prior to her stay in the nursing home but who saw her, although infrequently while in the home, testified as to her physical ailments and her preoccupation with those ailments, her childishness, her lack of interest, and her lack of ability to think or converse logically. Dr. McCormick, who had been Mrs. Kelly's physician for almost eight years until she entered the nursing home, stated that Mrs. Kelly suffered from arteriosclerotic brain disease or senile dementia and could not possibly have had the mental capacity to execute a will. While he would concede that Mrs. Kelly's physical problems might well have stabilized and even very slightly improved for a short time, he believed that it was medically impossible for her to have recovered any significant degree of mental capacity after entering the home.
The trial judge in his written reasons for judgment stated ". . . the evidence of Miss Kelly's physical, mental and emotional degeneration for the several years prior to her death is very substantial." He further stated that "When reviewed as a whole, the evidence convinces the court that Miss Kelly did not have the mental and emotional capacity to deliberate her actions knowledgeably and act independently to make an unconfused and uninfluenced decision at the time she executed the contested will," citing Succession of Dixon, 269 So.2d 323 (La.App., 2d Cir., 1972).
We find that the evidence is sufficient to support the conclusion of the lower court that Mrs. Kelly lacked testamentary capacity and that therefore the will executed on August 25, 1972, before a notary public, is invalid.
It is appropriate at this point to note that in Succession of Bradford, 130 So.2d 702, 704 (La.App., 2d Cir., 1961), we had the occasion to say:
"In determining the validity of a will, the trial court's findings of fact are entitled to great weight and should not be disturbed unless clearly or manifestly erroneous."
See the authorities cited therein and also Succession of Staggers, 254 So.2d 289, 292 (La.App., 4th Cir., 1971writ refused, 1971).
Having thus determined the will to be invalid for want of testamentary capacity, it is unnecessary for us to consider the question in regard to the applicability of Article 1489 of the Louisiana Civil Code.
We find no error or abuse of discretion by the trial judge in taxing all costs to Mrs. Doris P. Johnston personally. She was named in this opposition proceeding in her position as executrix and individually as administrator and co-owner with her two brothers of Hillview Nursing Home, Inc. The jurisprudence of this State recognizes that where the executrix, Mrs. Johnston in this instance, has a special and individual interest which she contests to protect against others, she will not be allowed such costs of litigation from the succession. Succession of Bradford, supra.
For the above-assigned reasons, the judgment is affirmed at appellant's cost.
Affirmed.