**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2021 CA 0802

IN THE MATTER OF THE SUCCESSION OF WAYNE EDMOND
BREEN

*Consolidated with*

NO. 2021 CA 0803

DOCTORS FOR WOMEN MEDICAL CENTER, LLC, CRAIG M.
LANDWEHR MD, LLC AND CRAIG M. LANDWEHR, MD IN HIS
CAPACITY AS A TRUSTEE OF THE DOCTORS FOR WOMEN
MEDICAL CENTER, LLC PROFIT SHARING PLAN AND TRUST

VERSUS

PATRICK VERNON BREEN, RYAN MICHAEL BREEN, DEVON
THOMAS BREEN, BRIDGET BREEN DUNBAR, SEAN MICHAEL
BREEN, KACIE BREEN, INDIVIDUALLY AND IN HER
CAPACITY AS TUTOR OF THE MINOR CHILD, AIDEN BREEN,
HUB INTERNATIONAL GULF SOUTH LIMITED, A DIVISION OF
HUB INTERNATIONAL MIDWEST LIMITED, MERRILL LYNCH,
FENNER AND SMITH INC. AND WAYNE E. BREEN MD, LLC

Judgment Rendered: **JUN 0 3 2022**

* * * * *

On Appeal from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Trial Court No. 2015-12925 c/w 2015-30176

Honorable William H. Burris, Judge Presiding[1]
Honorable Scott Gardner, Judge Presiding[2]

---

[1] Judge Burris signed the April 27, 2020 judgment at issue in this appeal.

[2] Judge Gardner signed the March 14, 2017 judgment.

Penzato, J., agrees in part, dissents in
part and assigns reasons

\* \* \* \* \*

Richard Ducote
Covington, LA

Attorney for Defendant-Appellant,
Kacie Breen

David S. Daly
Elliot M. Lonker
New Orleans, LA

Attorneys for Defendant-Appellee,
Alyce B. Landry, Court Appointed
Independent Administratix

Michael O. Adley
Lafayette, LA

Attorney for Defendants-Appellees,
Barbara Irwin and the Law Firm of
Pujol, Pryor & Irwin, LLC

\* \* \* \* \*

BEFORE:  WHIPPLE, C.J., PENZATO, AND HESTER, JJ.

2

**HESTER, J.**

This matter is before us on appeal by Kacie Breen, the surviving spouse of a testator, from judgments of the trial court ordering the payment of fees and expenses relative to the administration of an estate.

## FACTUAL AND PROCEDURAL HISTORY

Dr. Wayne E. Breen died testate on March 1, 2015, survived by his spouse, Kacie Magee Breen; their minor son; five adult children from a previous marriage[3] (hereinafter, the "Breen adult children"); and Aaron Dylan Knapp, Dr. Breen's adult son from a previous extra-marital relationship. This proceeding was instituted on March 6, 2015 by Mrs. Breen with the filing of a Petition to Appoint Notary to Search for Testament ("Petition").

On March 23, 2015, Jeffrey Dunbar, the husband of Dr. Breen's only daughter, submitted an application to the trial court seeking to be appointed as the provisional administrator of the estate. Mr. Dunbar noted that the copy of Dr. Breen's purported testament attached to the Petition identified him as the alternate independent executor while acknowledging that Mrs. Breen was the first named independent executrix. However, the application also indicated that Mrs. Breen shot and killed Dr. Breen, that the St. Tammany Parish Coroner classified Dr. Breen's death as a homicide, and that the facts and circumstances of the shooting were still under investigation, including whether any criminal action was committed by Mrs. Breen.[4]

On March 31, 2015, Mrs. Breen filed an application seeking to be appointed as provisional administrator. Thereafter, the trial court set the matters for hearing

---

[3] Bridget Breen Dunbar, Patrick Breen, Sean Breen, Ryan Breen, and Devin Breen are the adult children of Dr. Breen's first marriage.

[4] We note that at the conclusion of an investigation by the St. Tammany Parish Sheriff's Office, the evidence and information supported Mrs. Breen's account of the facts surrounding Dr. Breen's death, which was the result of a justifiable homicide. Moreover, the St. Tammany Parish District Attorney convened a Grand Jury, which returned a "No True Bill" in the matter on April 7, 2016.

3

on April 21, 2015. At the conclusion of the hearing, the trial court appointed both Mr. Dunbar and Mrs. Breen as co-provisional administrators, dividing the succession management responsibilities between them.

In the months following the appointment of the co-provisional administrators, competing petitions were filed by Mrs. Breen seeking to probate Dr. Breen's will and by Mr. Dunbar and the Breen adult children seeking to annul the will. Additionally, a Motion to Remove Mrs. Breen as Succession Representative and Appoint Independent Third Party was filed by Sean, Ryan, Patrick, and Devin Breen on June 8, 2015, and a hearing was set for June 18, 2015. Prior to the hearing, the trial court advised that all parties agreed to appoint a third-party administrator during a pre-trial conference, and the trial court directed counsel for Mrs. Breen to prepare a judgment to that effect, which judgment was later signed on August 27, 2015.

Ultimately, the parties submitted a Consent Motion and Order Appointing Independent Administrator and Evidencing Letters of Independent Administration, which motion and order appointed Alyce B. Landry as the Independent Administrator of the Succession of Wayne Edmund Breen, having all rights, powers, and duties of an independent administrator as provided in La. Code Civ. P. art. 3396, *et seq*. Included with the consent motion and order was the engagement letter of Ms. Landry, which was signed by counsel for all parties. Ms. Landry took her oath of independent administration on August 5, 2015 and was immediately thrust into a highly contentious succession proceeding with numerous additional lawsuits borne as a result of Dr. Breen's death,[5] one of which, a concursus proceeding instituted by

---

[5] On August 12, 2015, the Breen adult children filed a petition within the instant proceeding seeking to have Mrs. Breen declared an unworthy successor pursuant to La. Civ. Code art. 941. While the petition for declaration of unworthiness was pending, two life insurance companies instituted federal lawsuits (later consolidated), see **Pruco Life Insurance Co. v. Breen**, 289 F.Supp.3d 777, 787-88 (E.D. La. 2017), aff'd, 734 F.Appx. 302 (5th Cir. 2018) (*per curiam*), in order to settle claims to the proceeds of two policies taken out by Dr. Breen naming Mrs. Breen as beneficiary. Additionally, Mr. Knapp filed suit against the Succession of Wayne Edmund Breen in the 22nd Judicial District Court, Suit No. 2016-10827.

Dr. Breen's former medical practice, was consolidated with the instant succession proceeding.[6]

The record, though designated on appeal by Mrs. Breen, demonstrates multiple occasions in which Ms. Landry and Mrs. Breen were at odds.

On December 2, 2015, Ms. Landry filed a motion and rule to show cause for accounting from Mrs. Breen, alleging that Mrs. Breen, the prior co-provisional administrator, refused to provide accounting despite requests for accounting and an inventory, which motion was granted. On January 19, 2016, Mrs. Breen filed a motion and order to compel the independent administrator to pay a reasonable monetary allowance from the assets of the succession for maintenance, which Ms. Landry opposed, in part, on the basis that the succession did not currently have liquid assets with which it could pay Mrs. Breen the requested $9,000.00 per month. It is unclear how this matter was resolved due to the limited, designated record on appeal.

On April 1, 2016, Mrs. Breen filed a motion and order to remove the independent administrator, alleging that Ms. Landry failed to fulfill her duties of collecting, preserving, and managing the property of the succession in accordance with the law.[7] Ms. Landry opposed the motion on the basis that Mrs. Breen did not allege that Ms. Landry committed any of the proscribed acts or omissions to justify

---

[6] The concursus proceeding was instituted to determine the proper recipient of the profit sharing/pension benefits for Dr. Breen's medical practice. On December 7, 2015, a consent judgment was signed ordering the consolidation of the concursus proceeding and the succession proceeding "subject to the concurrence of Judge Scott C. Gardner." This designated record does not contain a written concurrence from Judge Gardner, who signed the March 14, 2017 judgment on appeal.

[7] Mrs. Breen alleged that "assets of the estate are being wasted and falling into disrepair"; "[Mrs.] Breen's efforts to assist and encourage Ms. Landry to actually administer the succession are met with open hostility, including threats to sell the family home from under her"; and "Ms. Landry has teamed up with Dr. Breen's adult children and has squandered precious estate assets and cash in a quixotic quest to prove [Mrs. Breen] civilly or criminally liable for Dr. Breen's death."

5

the removal pursuant to La. Code Civ. P. art. 3182[8] nor could Mrs. Breen meet her burden of proof. After a lengthy hearing on October 20, 2016 in which testimony and evidence was presented, the trial court signed an order on November 9, 2016, denying the motion to remove the independent administrator and further providing a "specific finding of fact that removing the Administratrix and starting over with a new administrator would not only cost the estate perhaps tens of thousands of dollars, but would also delay the proceedings by many months or perhaps years."

On October 20, 2016, Ms. Landry filed an "Accounting of Independent Administratrix," containing the most recent accounting for the succession. Thereafter, on November 9, 2016, the date the trial court signed the order denying the motion to remove the independent administrator, Ms. Landry filed a motion for approval of interim accounting and for interim payment of $87,762.86 in independent administrator fees and $30,795.46 in attorney fees, totaling $118,558.32, which represented amounts billed through October 2016. Ms. Landry also sought a retainer in order to continue in her duties as independent administrator and, alternatively, sought to be discharged from her duties if a retainer was not approved. Mrs. Breen opposed the motion, contending Ms. Landry's requested compensation was "patently unreasonable, given that [she] has abjectly failed to satisfy her [La.] C.C.P. art. 3191 (A) duties of collecting, preserving, and managing the property of the succession in accordance with law." Mrs. Breen further

---

[8] Louisiana Code of Civil Procedure art. 3182 provides as follows:

> The court may remove any succession representative who is or has become disqualified, has become incapable of discharging the duties of his office, has mismanaged the estate, has failed to perform any duty imposed by law or by order of court, has ceased to be a domiciliary of the state without appointing an agent as provided in Article 3097(4), or has failed to give notice of his application for appointment when required under Article 3093.

> The court on its own motion may, and on motion of any interested party shall, order the succession representative sought to be removed to show cause why he should not be removed from office. The removal of a succession representative from office does not invalidate any of his official acts performed prior to his removal.

contended that there was no rational relationship between Ms. Landry's billing and any benefit to the estate.

With leave of court, Ms. Landry supplemented her motion multiple times to add additional billing through January 2017. After a hearing on January 19, 2017, the trial court took the matter under advisement, further ordering that the administrator submit all additional billings within ten days and providing Mrs. Breen twenty-five days in which to provide objection to any of the bills submitted. Thereafter, the trial court signed a judgment on March 14, 2017: (1) granting Ms. Landry's motion in part and finding her entitled to $115,675.82 in administrator and attorney fees; and (2) relieving Ms. Landry of her responsibilities as independent administrator, with no mention of an effective date.

On Mrs. Breen's motion, the trial court issued an order on March 17, 2017, staying that part of the March 14th judgment terminating Ms. Landry's appointment, pending completion of the imminent trial in the federal court litigation involving two of Dr. Breen's life insurance policies, in which Mrs. Breen was named as beneficiary. Ms. Landry, representing Dr. Breen's estate, was a party to the federal litigation, wherein she and the Breen adult children opposed Mrs. Breen's receipt of the life insurance proceeds. After the federal trial, the federal district court rendered judgment in Mrs. Breen's favor, as claimant to the proceeds of the life insurance policies. **Pruco Life Insurance Co. v. Breen**, 289 F.Supp.3d 777, 798-99 (E.D. La. 2017), aff'd, 734 F. Appx. 302 (5th Cir. 2018) (*per curiam*).

On May 19 2017, Mrs. Breen filed a motion and order for appeal and designation of record, specifically seeking relief from the March 14th judgment's award of administrator and attorney fees to Ms. Landry. On August 14, 2017, Ms. Landry filed a motion to dismiss Mrs. Breen's appeal for failure to pay the appeal costs, which motion was denied. Ms. Landry also filed a motion to lift the stay of the March 14th judgment after the federal court judgment was rendered, which the

trial court granted. The trial court signed a judgment on November 13, 2017, granting the motion to lift the stay and terminating Ms. Landry's appointment and obligations as independent administrator of Dr. Breen's succession, effective October 26, 2017, which was the date of the motion hearing.

The March 14th judgment came before this court on appeal; however, the appeal was dismissed for lack of appellate jurisdiction. **Matter of Succession of Breen**, 2018-0002, 2018-0003 (La. App. 1st Cir. 12/13/18), 2018 WL 6567356 (unpublished), writ denied, 2019-0292 (La. 4/8/19), 267 So.3d 617. This court determined that the March 14th judgment awarding interim payment of independent administrator fees and attorney fees, authorized by La. Code Civ. P. art. 3351, was an advance on Ms. Landry's compensation during the administration of the estate and constituted an interlocutory judgment, which is appealable only when expressly provided by law. La. Code Civ. P. arts. 1841 and 2083. Finding no express law permitting an appeal of the March 14th judgment, this court dismissed the appeal. **Id**. at *2.

Subsequent to the dismissal of the appeal of the March 14th judgment, the former independent administrator's attorney, Barbara Irwin, filed a Motion and Application for Payment of Estate Debts and Incorporated Memorandum in Support Thereof on August 26, 2019. According to Ms. Irwin's motion, she and her law firm served as counsel of record for the former independent administrator, Ms. Landry. It was noted that the trial court's March 14th judgment provided for the payment of Ms. Landry's fees and expenses, which expenses included Ms. Irwin's fees through December 2016. However, since December 2016 and through September 18, 2017, Ms. Irwin and her law firm continued to represent Ms. Landry through the course of several succession matters in litigation prior to Ms. Landry being permitted to withdraw from her duties as independent administrator. As claimed in the motion, the outstanding balance of attorney fees totaled $31,234.22 and the costs totaled

8

$4,081.78, which sums were evidenced in invoices attached to the motion. Also attached as exhibits to the motion were two letters: one letter dated September 18, 2017, in which Ms. Irwin submitted a claim to the succession in accordance with La. Code Civ. P. art. 3241 in the amount of $66,694.71, and another letter dated July 10, 2017, in which Ms. Landry, as administrator of the succession, received and acknowledged the claim of Ms. Irwin's law firm in the amount of $65,262.30, representing the balance as of July 6, 2017, which also indicated that the claim would be listed as a succession debt. According to the motion, a partial payment of the outstanding balance of $65,262.30 was made, which left a balance owed by the estate.[9]

Mrs. Breen opposed Ms. Irwin's motion, contending that Ms. Irwin and her law firm were owed nothing; that Ms. Irwin's firm was indebted to the succession for its "gross misfeasance and malfeasance"; that the fees and costs were not estate debts; and that all of Ms. Irwin's exhibits were unverified, self-serving hearsay. The trial court held a hearing on March 5, 2020, receiving evidence and testimony from Ms. Irwin and Mrs. Breen. At the conclusion of the hearing, the trial court ruled as follows:

> My appreciation of the facts as they have been laid out is that Ms. Irwin was hired for litigation purposes, only for the administrator at the time, Alyce Landry. She did what Ms. Alyce Landry asked her to do.
>
> Whether it involved any direct contribution to the assets or liabilities of the estate, we don't know. Ms. Landry is not here to tell us.
>
> But the bottom line is, a lot of times, litigation doesn't necessarily involve dollars and cents. It's whether it may or may not involve dollars and cents.
>
> So I do find that her participation in the litigation was at the direction of the administrator, who asked for it. I also understand that there is a

---

[9] The record contains a Satisfaction of Judgment filed on October 23, 2017, which indicated that the March 14th judgment was "full paid or otherwise satisfied." Accordingly, the amount of attorney fees sought by Ms. Irwin ($30,795.46) and previously approved by the trial court in the March 14th judgment were paid subsequent to Ms. Landry's acceptance of the outstanding attorney fee balance of $65,262.30.

9

separate lawsuit for the alleged malpractice, malfeasance, misfeasance -- I forget how it was characterized.

...

So the bottom line is, from the succession purposes, Ms. Irwin did what she was asked to do by the representative. So for that reason, I'm going to grant the motion for the $31,234.22, and the $4,081.78. But certainly understand that if there's anything about whether or not they should have or shouldn't have or anything like that, it's more properly heard in the -- and I'm just going to characterize it as a malpractice suit.

But as far as I'm concerned for the succession purposes only, she represented the administrator. The administrator did whatever she thought was in the best interest of the estate to monitor the litigation, to be involved as necessary.

So I'm going to grant it.

...

There's been no evidence asserted directly to rebut the prima facie evidence that they were proper claims of the estate.

...

I'm going to go on the fact that there was a prima facie establishment by the prior administrator and grant those.

The trial court later clarified that its "ruling is based solely on what has been presented today and has nothing to do with the fees that Judge Gardner did ... My ruling is limited to the 31 and change, and 4 and change in costs that we had testimony about today."

Also at the conclusion of the hearing, the trial court agreed that this judgment, as well as the prior judgment dated March 14th should be designated as final pursuant to La. Code Civ. P. art. 1915(B)(1). The trial court made such designation in light of the fact that there were no other outstanding bills beyond what was submitted in connection with the motion heard by the court and the fact that the administration had since been terminated.

On April 27, 2020, the trial court signed a judgment granting the Motion for Payment of Estate Debts filed by Ms. Irwin and her law firm, Pujol, Pryor & Irwin, LLC, ordering the succession to make payment to Ms. Irwin and Pujol, Pryor &

Irwin, LLC in the amount of $35,316.00 with interest from the date of judicial demand, which payment was ordered to be charged against and paid from the assets of the estate in priority to other claims in accordance with law. Further, the April 27th and the prior March 14th judgments were designated as final in accordance with La. Code Civ. P. art. 1915(B)(1).

Mrs. Breen subsequently filed a "Motion for Appeal of the April 27, 2020, and March 14, 2017, Judgments; Designation of the Record, & Motion to Stay" on July 24, 2020. The trial court signed an order granting an appeal and staying that portion of the April 27, 2020 judgment directing the payment to Ms. Irwin and her law firm from the assets of the estate in priority to other claims pending the final disposition of Mrs. Breen's appeal of the judgment. On appeal, Mrs. Breen assigns the following errors: (1) the trial court erred as a matter of law and abused its discretion in awarding the independent administrator $115,675.82 in fees after failing to permit Mrs. Breen's counsel to cross-examine the independent administrator; and (2) the trial court erred as a matter of law and abused its discretion in awarding Ms. Irwin and her law firm $35,316.00 as a priority succession claim, as Ms. Irwin never established that the bills were incurred for the benefit of the succession.

## APPELLATE JURISDICTION

The April 27, 2020 judgment granting Ms. Irwin's motion to pay estate debts and ordering the debt to be charged against and paid from the assets of the estate in priority to other claims in accordance with law was certified as a final judgment in accordance with La. Code Civ. P. art. 1915(B)(1). Additionally, within the April 27th judgment, the trial court certified as final the prior, separate judgment dated March 14, 2017.

Pursuant to La. Code Civ. P. art. 2121, an appeal is taken by obtaining an order therefor, within the delay allowed, from the court which rendered the

11

judgment. **Hill International, Inc. v. JTS Realty Corporation**, 2021-0157 (La. App. 1st Cir. 12/30/21), ___ So. 3d ___, ___, 2021 WL 6328321, *3. Unless a party litigant obtains a valid order of appeal duly granted by the trial court, there can be no appeal. **Noyel v. City of St. Gabriel**, 2015-1890 (La. App. 1st Cir. 9/1/16), 202 So. 3d 1139, 1142, writ denied, 2016-1745 (La. 11/29/16), 213 So. 3d 392. See also La. Code Civ. P. art. 2088. The order of appeal is jurisdictional; this lack of jurisdiction can be noticed by the court on its own motion at any time. **Noyal**, 202 So. 3d at 1142. The failure of the appellant to obtain an order of appeal forfeits his right to appeal. **Rose v. Twin River Development, LLC**, 2017-0319 (La. App. 1st Cir. 11/1/17), 233 So. 3d 679, 684.

In Mrs. Breen's motion to appeal, filed on July 24, 2020, both judgments – the March 14th and the April 27th judgments – are cited as being appealed. However, the order of appeal only stated as follows:

> The foregoing considered, **IT IS HEREBY ORDERED** that this appeal is granted, and that the Clerk shall prepare and lodge the record as designated pursuant to C.C.P. art. 2128 in the Court of Appeal for the First Circuit; and, the April 27, 2020, judgment to the extent that the $35,316.00 awarded to Barbara L. Irwin and the firm of Pujol, Pryor, & Irwin, LLC is to be *"paid from the assets of the estate in priority to other claims"* is stayed pending a final disposition of Kacie Breen's appeal in the appellate court.

The only judgment mentioned in the order is the April 27th judgment and, at best, the appeal order grants an appeal from the April 27th judgment. Moreover, the Notice of Appeal issued by the trial court provided as follows:

> NOTICE is hereby given that a Motion for Appeal has been entered on July 24, 2020 upon motion of Kacie Breen and an order granting the appeal was entered on August 3, 2020 from the judgment filed on April 7, 2020 and signed on April 27, 2020 and is returnable to the First Circuit Court of Appeal as determined by law.

Similarly, the Notice of Lodging issued by this Court references only the "Judgment(s) dated: 04/27/2020 Motion and Application for Payment of Estate Debts filed by Barbara L. Irwin and the law firm of Pujol, Pryor, & Irwin, LLC." Because the order of appeal is jurisdictional, we find that our appellate jurisdiction

only attaches to the April 27, 2020 judgment, which is the only judgment properly before us on review. We, therefore, dismiss the appeal from the March 14th judgment, later certified as final within the April 27th judgment, for lack of jurisdiction and remand it to the trial court for the issuance of an order of appeal.

Prior to considering the merits of the appeal of the April 27, 2020 judgment, we must determine whether the judgment was properly certified. See **Capital Management Consultants, Inc. v. Duhon**, 2016-0703 (La. App. 1st Cir. 4/18/17), 227 So.3d 839, 842. Although the trial court designated the judgment as being final and appealable under La. Code Civ. P. art. 1915(B), that designation is not determinative of this court's jurisdiction. **Van ex rel. White v. Davis**, 2000-0206 (La. App. 1st Cir. 2/16/01), 808 So.2d 478, 480. Appellate courts have the duty to examine subject matter jurisdiction *sua sponte*, even when the parties do not raise the issue. **Motorola, Inc. v. Associated Indemnity Corporation**, 2002-0716 (La. App. 1st Cir. 4/30/03), 867 So.2d 715, 717 (*en banc*). The proper standard of review for an order designating a judgment as final for appeal purposes when accompanied by explicit reasons is whether the trial court abused its discretion. **R.J. Messinger, Inc. v. Rosenblum**, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122.

In this case, the trial court acknowledged that the independent administration of the estate was now terminated and that Ms. Irwin would have no additional bills for her legal representation of Ms. Landry as independent administrator. Accordingly, the trial court concluded that designating the judgment granting Ms. Irwin's Motion for Payment of Estate Debts as final was warranted. We do not find that the trial court abused its discretion in designating the April 27, 2020 judgment as final for appeal in light of the trial court's reasons under the circumstances of this case.

## LEGAL PRECEPTS

Louisiana Civil Code art. 1415 provides as follows:

> Estate debts are debts of the decedent and administration expenses. Debts of the decedent are obligations of the decedent or those that arise as a result of his death, such as the cost of his funeral and burial. Administration expenses are obligations incurred in the collection, preservation, management, and distribution of the estate of the decedent.

Pursuant to the Official Revision Comments – 1997 to La. Civ. Code art. 1415, administration expenses are "broadly defined to include expenses that are incurred after death in preserving, safeguarding, and operating the property of the estate, such as repairs, costs of maintenance and upkeep, interest attributable to a debt, and custodial fees." There are instances in which attorney fees incurred by the succession representative may be classified as estate debts. See **Succession of LaRue**, 2016-1146, 2016-1147 (La. App. 1st Cir. 7/20/17), 2017 WL 3083666, *7 (unpublished). Notably, legal expenses of administration incurred by an executor on behalf of the estate are proper charges against the succession. **Id.** (citing **Succession of Bradford**, 130 So.2d 702, 706 (La. App. 2d Cir. 1961)). Additionally, while the estate may be liable for attorney fees incurred by the administrator for services performed for the benefit of the estate, the estate is not liable for attorney fees that benefit the administrator individually. **Succession of LaRue**, 2017 WL 3083666 at *7; **Succession of Reno**, 2015-0854 (La. App. 1st Cir. 9/12/16), 202 So.3d 1147, 1154, writ denied, 2016-2106 (La. 2/10/17), 215 So.3d 701.

Pursuant to La. Code Civ. P. art. 3241, "[a] creditor of a succession under administration may submit his claim to the succession representative for acknowledgment and payment in due course of administration." Louisiana Code of Civil Procedure article 3242 provides as follows:

> The succession representative to whom a claim against the succession has been submitted, within thirty days thereof, shall either acknowledge or reject the claim, in whole or in part. This acknowledgment or express

rejection shall be in writing, dated, and signed by the succession representative, who shall notify the claimant of his action. Failure of the succession representative either to acknowledge or reject a claim within thirty days of the date it was submitted to him shall be considered a rejection thereof.

Louisiana Code of Civil Procedure article 3243(1) and (2) provide, in part, that the acknowledgment of a claim by the succession representative shall entitle the creditor to have his claim included in the succession representative's petition for authority to pay debts and shall create a *prima facie* presumption of the validity of the claim. However, "[i]f the claim is rejected in whole or in part by the succession representative, the creditor to the extent of the rejection may enforce his claim judicially." La. Code Civ. P. art. 3246.

## LEGAL ANALYSIS

In the sole assignment of error before us, Mrs. Breen challenges the April 27, 2020 judgment, contending that the trial court erred as a matter of law and manifestly abused its discretion in awarding Ms. Irwin and her law firm $35,316.00 as a priority succession claim, where Ms. Irwin never established that her bills were incurred for the benefit of the estate. Relying on **Succession of Reno**, 202 So.3d at 1154, Mrs. Breen contends that attorney fees incurred on behalf of a succession can only be charged to the succession when the legal services were for the benefit of the succession itself and not for the individual interest of the succession administrator.

At the hearing on March 5, 2020, counsel for Ms. Irwin moved to offer, file, and introduce an affidavit of Ms. Irwin attesting to and attaching the following documents: (1) all relevant bills; (2) the proof of claim submitted to Ms. Landry; and (3) Ms. Landry's acceptance of the claim. Counsel for Mrs. Breen objected, and the trial court withheld its ruling until after argument on the motion was had. After the argument of counsel, but prior to receiving live testimony, the trial court stated, "I'm going to admit the previously offered affidavits." Nevertheless, the record fails to establish that the affidavit and its attachments were provided to the court.

15

Counsel for Mrs. Breen offered and introduced four exhibits: (1) a letter dated October 24, 2019 from counsel for Mrs. Breen to Ms. Irwin in which the claim previously submitted by Ms. Irwin for legal fees was rejected, further stating that "any alleged approval by the prior Administrator Alyce Landry is reversed and vacated"; (2) a certified mail receipt corresponding to the October 24, 2019 letter; (3) a copy of the Memorandum in Opposition to *Ex Parte* Motion for Stay of the Administratrix Ability to Alienate Immovable Property and Motion to Strike Pleadings filed on October 16, 2017; and (4) a copy of this court's judgment in **Matter of Succession of Breen**, 2018 WL 6567356.

At the hearing, the trial court heard testimony from both Ms. Irwin and Mrs. Breen. According to Ms. Irwin, she was employed by Ms. Landry, the former independent administrator, in order to participate as necessary in ongoing litigation involving the estate or succession of Dr. Breen.[10] Ms. Irwin contracted with Ms. Landry, who was acting on behalf of the estate, and they agreed to a billable rate of $200.00 per hour.[11]

Ms. Irwin stated that there were seven ongoing lawsuits for which the estate required an attorney to make an appearance, go to court, attend settlement conferences, prepare pleadings, and attend depositions, if necessary, for the protection and benefit of the estate. Some of the lawsuits required minimal monitoring (*i.e.*, the wrongful death lawsuit), but the majority of Ms. Irwin's billing concerned the federal proceedings in which the estate was named as a defendant.

---

[10] According to Ms. Irwin, Ms. Landry is an attorney but is not a litigator.

[11] Ms. Irwin also stated, "you have to [contract] through the administrator. That's the only avenue to – for the estate to have any capacity to exist, it has to be through the administrator. And that's with whom I worked and communicated." See La. Code Civ. P. art. 3191(A) (providing that a succession representative is a fiduciary with respect to the succession, having the duty of collecting, preserving, and managing the property of the succession in accordance with the law) and La. Code Civ. P. art. 3396.15 (providing that an independent administrator shall have all rights, power, authorities, privileges, and duties of a succession representative).

16

Ms. Irwin prepared for and participated in the trial as well as the settlement conferences for the federal proceedings.

Counsel for Mrs. Breen questioned what benefit the estate received from Ms. Irwin's services, to which Ms. Irwin responded as follows:

> Well, sir, again, as counsel for the estate, I had to appear in court. I had to make pleadings. I had to respond accordingly. I had to protect the interest of the estate where it was necessary, whether there were deadlines in place or not. I'm not sure.
>
> I understand you disagree with the positions that I took as a lawyer. But I represented the estate, and I protected the estate. The estate didn't miss any litigation deadlines. There were no defaults taken against the estate in any of the litigations. And I participated as I was required to do as counsel for the estate.

The questioning continued, as follows:

> Q.    Did any work that you did for which you billed ultimately the $66,000, did any of that bring any money in to the estate?
>
> A.    I'm not sure. I don't know.
>
> Q.    You don't know? Can you identify one red cent of money that any of your work generated for the estate?
>
> A.    I don't know. That wasn't the purpose of what I was doing. That's not something that I would have accounted for or devised.
>
> ...
>
> Q.    Okay. So it is your position that even though you don't think the succession is a separate legal entity, that the estate should immediately give you $31,000 for work that didn't produce any income whatsoever for the succession, right?
>
> A.    These are my legal bills, representing the estate, in necessary litigation matters, which required representation. And I was hired to do a job. I did my job. And yes. I would like for the estate to pay me for that work.

Through the questioning by her own attorney, Ms. Irwin testified that she generated bills while serving as the attorney for the administrator of the estate of Dr. Breen, that she recorded her bills contemporaneously with the activity performed, and submitted bills on a monthly basis. According to Ms. Irwin's testimony, the accurate and total amount of her bills from December 1, 2016 to the end of her

17

representation was $31,234.22.[12] She further testified that these bills related to litigation involving the estate or succession of Dr. Breen and were all generated as a result of the matters for which she was retained by Ms. Landry. Ms. Irwin was asked specifically about various lawsuits in which she billed for her services and testified as follows:

> Q. We talked about the federal interpleader lawsuit. The succession was named, or Alyce Landry as administrator for the succession, was named a party to the federal interpleader suit?
>
> A. I don't remember exactly who was named. But yes. She was a defendant in those interpleader actions, yes.
>
> Q. So your involvement was forced just because whoever you were representing was named as a party in the federal interpleader suit?
>
> A. Yes.
>
> Q. And the federal interpleader suit would have affected the estate if the money ultimately came to the estate, right?
>
> A. Yes.
>
> Q. Same thing with the paternity. The paternity lawsuit, that had some effect on the succession or estate of Wayne Breen, correct?
>
> A. It did, yes.
>
> Q. The concursus proceeding, does that also have an effect on the estate?
>
> A. It did have an effect on the estate, yes.
>
> Q. So all the legal fees that you generated all have to do with you overseeing the litigation that had an effect on the succession of Wayne Breen?
>
> A. I was either in a position to participate in it because it was necessary on behalf of the estate, or I was just simply monitoring it. Which then the billing was extremely limited, and my bills reflect that.

During Mrs. Breen's testimony, she stated that she is the current administrator of the estate.[13] Mrs. Breen testified that she has prevailed or was successful in every litigation in which Ms. Irwin was involved—the federal litigation, the wrongful

---

[12] Ms. Irwin did not testify as to the amount of costs incurred and billed to the estate.

[13] The designated record does not otherwise reflect who the current administrator is, nor does the record reflect the timing of Mrs. Breen's appointment as administrator.

death case, and the concursus case. She further testified that neither Ms. Landry nor Ms. Irwin ever sided with her in any of the litigation. Upon being asked why she, as the current administrator of the estate, takes the position that Ms. Irwin should "not get any of this money she asks for," Mrs. Breen responded as follows:

> I don't really believe she did anything for the estate. Besides oppose me getting the life insurance and mounting a case against me for being able to receive the life insurance, and trying to prove that I shot my husband in an unjustified offense. That's basically all she did.

Notwithstanding her position, Mrs. Breen acknowledged that she could not dispute that the bills Ms. Irwin submitted were related to Ms. Irwin's overseeing seven lawsuits in litigation involving the succession of Dr. Breen.

In view of the testimony, Ms. Irwin was able to establish that the bills for her legal services, totaling $31,234.22, were incurred on behalf of and for the protection of the estate. She identified all seven cases in litigation in which she was hired by Ms. Landry to monitor and participate in on behalf of the estate. The fact that she did not generate any money for the estate is not determinative in this matter. As noted by the trial court in its oral reasons, "a lot of times, litigation doesn't necessarily involve dollars and cents." None of the evidence or testimony presented by Mrs. Breen established or indicated that the attorney fees were not incurred on behalf of the succession or that the attorney fees were incurred for the individual benefit of the independent administrator previously appointed by the court through a consent judgment.

The trial court was in the best position to evaluate the testimony of Ms. Irwin and Mrs. Breen, and this court cannot disturb the trial court's reasonable credibility evaluations and reasonable factual inferences. See **Stobart v. State through Department of Transportation and Development**, 617 So.2d 880, 882-83 (La. 1993). After reviewing the entirety of the record, we are unable to conclude that the trial court "erred as a matter of law" or "manifestly abused its discretion," as argued

by Mrs. Breen, in awarding Ms. Irwin and her law firm, $31,234.22 (of the $35,316.00 awarded) as a priority succession claim for legal services rendered for the benefit of the succession of Dr. Breen. We do not find merit to this assignment of error. However, without testimony or documentary evidence in the appellate record to support the additional $4,081.78 awarded, we find error in this portion of the trial court's award and amend the April 27, 2020 judgment accordingly.

## CONCLUSION

Based upon the foregoing, we dismiss the appeal from the March 14, 2017 judgment for lack of jurisdiction and remand it to the trial court for the issuance of an order of appeal. Further, we amend the April 27, 2020 judgment to reduce the amount awarded to Barbara L. Irwin and Pujol, Pryor & Irwin, LLC to $31,234.22 and affirm, as amended, the April 27, 2020 judgment. Costs of this appeal are assessed one-half to Kacie M. Breen and one-half to Barbara L. Irwin and Pujol, Pryor & Irwin, LLC.

**APPEAL OF THE MARCH 14, 2017 JUDGMENT DISMISSED AND REMANDED; AMENDED AND AFFIRMED, AS AMENDED, AS TO THE APRIL 27, 2020 JUDGMENT.**

# STATE OF LOUISIANA
## COURT OF APPEAL
## FIRST CIRCUIT

### 2021 CA 0802

## IN THE MATTER OF THE SUCCESSION OF WAYNE EDMOND BREEN

*Consolidated with*

### 2021 CA 0803

## DOCTORS FOR WOMEN MEDICAL CENTER, LLC, CRAIG M. LANDWEHR, M.D., IN HIS CAPACITY AS A TRUSTEE OF THE DOCTORS FOR WOMEN MEDICAL CENTER, LLC PROFIT SHARING PLAN AND TRUST

### VERSUS

## PATRICK VERNON BREEN, RYAN MICHAEL BREEN, DEVON THOMAS BREEN, BRIDGET BREEN DUNBAR, SEAN MICHAEL BREEN, KACIE BREEN, INDIVIDUALLY AND IN HER CAPACITY AS TUTOR OF THE MINOR CHILD, AIDEN BREEN, HUB INTERNATIONAL GULF SOUTH LIMITED, A DIVISION OF HUB INTERNATIONAL MIDWEST LIMITED, MERRILL LYNCH, FENNER AND SMITH, INC., AND WAYNE E. BREEN, M.D., LLC

PENZATO, J., dissenting in part.

I respectfully dissent from that portion of the majority opinion dismissing the appeal of the March 14, 2017 judgment. Kacie Breen filed a motion for appeal that clearly references both the March 14, 2017 judgment and the April 27, 2020 judgment. The August 3, 2020 order of appeal states that "this appeal is granted." Appeals are favored in the law and should be maintained unless a legal ground for dismissal is clearly shown. *Ranson v. Cooper*, 2016-0029 (La. App. 1 Cir. 9/19/16), 228 So. 3d 1254, 1257. Moreover, to the extent that the Notice of Appeal issued by the St. Tammany Parish Clerk of Court references only the April 27, 2020 judgment, I believe the appropriate remedy would be to remand the matter for the limited purpose of instructing the Clerk of Court to issue an amended Notice of Appeal specifying the dates of both judgments. See *Hill*

*International, Inc. v. JTS Realty Corporation*, 2021-0157 (La. App. 1 Cir. 12/30/21), ___ So. 3d ___, ___, 2021 WL 6328321, *4.

I agree with the majority decision amending and affirming the April 27, 2020 judgment.